**H. F. LIVERMORE CORPORATION**
v.
**AKTIENGESELLSCHAFT GEBRUDER LOEPFE, Appellant.**
No. 23773.
United States Court of Appeals,
District of Columbia Circuit.
Sept. 18, 1970.

Messrs. Daniel M. Redmond and Alan C. Campbell, Washington, D. C., were on the brief for appellant.

Mr. James W. Dent, Washington, D. C., was on the brief for appellee.

Before BAZELON, Chief Judge, and McGOWAN and ROBINSON, Circuit Judges, in Chambers.

PER CURIAM:

This appeal is from an order of the District Court denying a motion to set aside a default judgment in a patent infringement case. Appellee is a Delaware corporation with its principal place of business in Boston, Massachusetts. Appellant is a Swiss corporation which has neither a place of business nor a designated agent in the United States.

In a letter dated March 13, 1968, appellant warned appellee that it was infringing two United States patents held by appellant.[1] Appellee responded in a letter dated April 11, 1968, to the effect that it was not contemplating commercial production of the assertedly offending article. However, on August 13, 1968, appellee wrote appellant that in fact it did intend to produce and sell "bobbin feelers" allegedly covered by appellant's patents; and that, in order to establish its legal right to do so, it was seeking declaratory relief in the United States District Court for the District of Columbia. Appellee enclosed a copy of the complaint which it was filing and further stated that it would be "glad to show [appellant's] attorney the material we have collected which we believe justifies our actions in the hope of satisfying you that we are correct." Appellee then closed the letter, which was addressed to appellant in Switzerland, with an offer to "take a license for a nominal royalty so as to avoid the cost of litigation and so as not to render your patents impotent against other parties."

Appellant thereupon retained counsel in New York, who wrote a letter, dated September 9, 1968, to appellee's Washington attorney who had filed the complaint. This letter was received on September 10, 1968—one day after an answer or other pleading was due to be filed in the District Court. In this letter, appellant's newly appointed counsel accepted the offer to view the "prior art" in order to determine the merits of appellee's position, and suggested that a conference be arranged. Appellee's Boston counsel, responding in a letter dated September 23, 1968, suggested Boston as the meeting place and left the date of the meeting to appellant's convenience.

Some time after September 23, 1968, but on or before October 29, 1968, there was a telephone conversation between counsel for the parties. That conversation was reported to appellee by its Boston counsel in a letter dated October 29, 1968. It said appellant's counsel had been told that there seemed to be no point in holding the meeting unless he had authority to grant a license at nominal cost. Appellant's counsel was represented as having expressed doubt as to the willingness of appellant to settle for merely nominal royalties, but that he would pursue the matter with his client and report back promptly. The letter closed in the following manner:

Nothing was said about the suit in Washington or about the default. *I avoided the subject, because I did not want to stimulate them into activity.* (Emphasis added.)

In a supplementary letter to appellee the next day, appellee's counsel went on to say:

[W]hile I made no mention of the Washington suit, Mr. Bader [appel-

---

1. The patents covered a product known as "bobbin feelers," devices used in textile manufacturing. One patent has since been disclaimed, leaving United States Patent No. 3,053,137 at issue.

lant's New York counsel] at the time remarked that it is a tough court and we would have difficulty in getting a judgment, indicating he is aware of the suit.

On November 1, 1968, appellee filed in the District Court a request for the entry of a default judgment, accompanied by an affidavit as required under Rule 55(a) of the Federal Rules of Civil Procedure. On November 13, 1968, a motion for the entry of a default judgment was made; and such a judgment was entered the same day. Neither appellant in Switzerland nor its counsel in New York was notified of the application for, or the entry of, the default judgment. On April 28, 1969, appellant's counsel in New York learned of it for the first time, and moved immediately to have it set aside. The Pretrial Examiner recommended that the default judgment not be set aside. Timely objections to the Pretrial Examiner's recommendation were taken but, by the order now appealed from, the District Court adopted the recommendation of the Pretrial Examiner.[2]

Rule 55(b) (2), Fed.R.Civ.P., although contemplating that judgment by default may be entered by the court under certain circumstances, contains the following proviso:

> If the party against whom judgment by default is sought has appeared in the action, he (or, if appearing by representative, his representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application. * * *

Therefore, the critical question is whether the exchanges between the parties described above constituted an "appearance" by appellant within the meaning of this language. The policy underlying the modernization of federal procedure, namely, the abandonment or relaxation of restrictive rules which prevent the hearing of cases on their merits, is central to this issue. Thorpe v. Thorpe, 124 U.S.App.D.C. 299, 301, 364 F.2d 692, 694 (1966); Barber v. Turberville, 94 U.S.App.D.C. 335, 337, 218 F.2d 34, 36 (1954); Erick Rios Bridoux v. Eastern Air Lines, 93 U.S.App.D.C. 369, 372, 214 F.2d 207, 210 (1954). This court has been mindful of this policy in its construction of the Rules in order to afford litigants a fair opportunity to have their disputes settled by reference to the merits. Barber v. Turberville, *supra. See also,* Tolson v. Hodge, 411 F.2d 123 (4th Cir. 1969); Tozer v. Charles A. Krause Milling Co., 189 F.2d 242, 245, 246 (3rd Cir. 1951).

■ Given this approach, the default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party. In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights. The default judgment remedy serves as such a protection. Furthermore, the possibility of a default is a deterrent to those parties who choose delay as part of their litigative strategy. The notice requirement contained in Rule 55(b) (2) is, however, a device intended to protect those parties who, although delaying in a formal sense by failing to file pleadings within the twenty-day period, have otherwise indicated to the moving party a clear purpose to defend the suit.

The relevant case law has supported this approach. In Dalminter, Inc. v. Jessie Edwards, Inc., 27 F.R.D. 491 (S. D. Texas 1961), a single letter by a defendant corporation to plaintiff's counsel, denying the allegations in plaintiff's summons, was deemed to be an "appearance" within the meaning of Rule 55(b) (2). The Third Circuit, in Hutton v. Fisher, 359 F.2d 913 (1966), held that a single telephone conversation in which plaintiff's counsel had acquiesced to defendant counsel's request for more time

---

2. Neither the Examiner nor the District Court spelled out the rationale of their respective refusals to reinstate the complaint.

to prepare his defense was sufficient to bring defendant within the notice provisions of the rule. In Press v. Forest Laboratories, Inc., 45 F.R.D. 354 (S.D. N.Y.1968), the court dealt with a situation where the disputed case was merely an extension of an earlier action in which the defendants and their representatives had made a formal appearance. It was decided that plaintiff was sufficiently aware of defendant's intention to defend the later suit, and notice should have been given.[3]

 On this record we believe that appellant must be taken to have appeared in the action for purposes of Rule 55(b) (2), and was, accordingly, entitled to notice of the application for a default judgment. It had made its purpose to defend the suit quite plain to appellee; and there is nothing to suggest that it would be otherwise than diligent in doing so once the negotiations suggested by appellee itself should prove fruitless. It was, of course, the latter who instigated this suit by the letter of March 13, 1968, warning about the possibilities of infringement. The exchanges between the parties thereafter were the normal effort to see if the dispute could be adjusted by agreement, but neither party was in any doubt that the suit would be contested if the efforts to agree were unavailing. In his letter of October 29, 1968, appellee's counsel reported that he did not mention the suit in order that appellant would not be stimulated into activity. Surely this letter indicates appellee's recognition that, if appellant knew the negotiations for the license were not taken seriously by the appellee, appellant would join issue in court promptly. And, while there is no doubt that appellant would have followed the safer course by pleading within the twenty-day period, this delay can-

not reasonably be interpreted as a reluctance to defend the suit.

Accordingly, we hold that the District Court erred in refusing to set aside the default judgment. The order appealed from is reversed and the case is remanded for further proceedings consistent herewith.

It is so ordered.

---

3. There are, of course, a number of cases which hold that, if the defendant indicates to the plaintiff that he has no defense or has no interest in the result, notice is not required since the delaying party is unlikely to become an active litigant. Gomes v. Williams, 420 F.2d 1364 (10th Cir. 1970); Rutland Transit Co. v. Chicago Tunnel Terminal Co., 233 F.2d 655 (7th Cir. 1956); United States v. Borchers, 163 F.2d 347 (2nd Cir. 1947); United States ex rel. Knupfer v. Watkins, 159 F.2d 675 (2nd Cir. 1947).