State of NEW YORK and Erin D. Crotty, Plaintiffs–Appellees,

v.

Kevan M. GREEN and Polymer Applications, Inc., Defendants–Appellants.

Docket No. 04–4070–CV.

United States Court of Appeals, Second Circuit.

Argued: July 14, 2005.

Decided: Aug. 18, 2005.

Diane R. Tiveron, Esq., Hogan & Willig, PLLC, (Corey J. Hogan, of counsel), Amherst, New York, for Defendants–Appellants.

David A. Munro, Assistant Attorney General (Denise Hartman, Assistant Solicitor General on the brief; Lisa M. Buria-

nek, and Jane C. Cameron, Assistant Attorneys General, of counsel) for Eliot Spitzer, Attorney General of the State of New York, Albany, New York, for Plaintiffs–Appellees.

Before: STRAUB and SACK, Circuit Judges, and KRAVITZ, District Judge.*

KRAVITZ, District Judge.

Defendant Polymer Applications, Inc. and its sole shareholder and president, Defendant Kevan M. Green, appeal from the District Court's refusal to vacate a default judgment against them. Defendants argue that the District Court should have set aside the default judgment as void under Rule 60(b)(4) of the *Federal Rules of Civil Procedure*. Alternatively, Defendants assert that the District Court should have vacated the default judgment under Rule 60(b)(6) because they did not willfully disregard their obligation to answer the complaint, they raised meritorious defenses, and plaintiffs would suffer no prejudice if the judgment were vacated. Defendants also seek a hearing on damages.

For the reasons that follow, we hold that the District Court did not err in refusing to set aside the default judgment, and accordingly, we affirm.

## BACKGROUND

This appeal is the latest chapter in a decades-long struggle between state and federal environmental officials and Kevan Green and his company, Polymer Applications, Inc. ("Polymer"), over environmental clean-up and remediation at Polymer's phenolic resin manufacturing plant in the Town of Tonawanda, Erie County, New York (the "Site"). The history of events leading to this lawsuit is described in detail in the District Court's decision, and there is no need to repeat it at length here. *See New York v. Green*, 2004 WL 1375555, at *1–*2, (W.D.N.Y. June 18, 2005) 2004 U.S. Dist. Lexis 11624, at *2–*5. It suffices to say that the Site has a lengthy history of releases of hazardous substances dating from the 1970s. In July 1988, a fire destroyed a significant portion of Polymer's facility, resulting in the release of an estimated 70,000 gallons of phenol solution and solvents, and forcing Polymer to cease operations at the Site. During the next ten years, state and federal environmental authorities studied the Site to assess the extent of contamination. In 1996, after finding significant soil, surface water and ground water contamination, the State of New York developed a plan to remediate the Site. Then, in 1998, after having spent two unsuccessful years trying to get Polymer to implement the remediation plan on its own, the State decided to proceed with remediation using state funds. However, Defendants refused to allow the State access to the Site, preventing remediation of the Site and prompting this lawsuit.

On March 20, 2001, the State of New York and Erin D. Crotty, Commissioner of the New York State Department of Environmental Conservation (collectively, the "State") filed this action against Polymer and Mr. Green in the United States District Court for the Western District of New York. Suing under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.*, and New York's common law of public nuisance and restitution, the State sought access to the Site for remediation and a determination that Defendants were liable for the costs of

---

* The Honorable Mark R. Kravitz of the United States District Court for the District of Connecticut, sitting by designation.

remediation. Defendants were personally served with the complaint on March 22, 2001. However, Defendants never filed an answer to the complaint or formally appeared in the lawsuit, even though they were represented by an attorney, Jeffrey Blum, at least until July 2001.

On May 23, 2001, the State moved under Rule 55(a) of the *Federal Rules of Civil Procedure* for entry of default against Defendants for their failure to appear or defend the lawsuit. The clerk of the court entered the default that same day, and on the following day, mailed notice of the entry of default to both Polymer and Mr. Green. Thereafter, for nearly a year, neither party took any further action in the lawsuit until the District Court issued an Order to Show Cause on February 4, 2002, requiring a written statement as to why the case should not be dismissed for failure to prosecute under the District Court's local rules. The District Court's order prompted the State to file a motion for default judgment on April 8, 2002.

The motion for default judgment sought an order granting the State access to the Site for remediation, requiring Defendants to pay the State's unreimbursed response costs to date of $1,334, 168.62 and declaring Defendants' liability for all future response costs incurred by the State in cleaning up the Site. The affidavit of counsel submitted with the State's motion for default judgment recited that Defendants had been served but had not responded to the complaint or submitted a motion for extension of time. The affidavit also described in detail the State's communications with Defendants and their lawyer, Mr. Blum, following the filing of the complaint and up until July 2001, when Defendants ceased all communications with the State and its counsel. It is undisputed that the State did not provide Defendants with written or oral notice that it had filed a motion for default judgment.

The District Court heard the State's motion for default judgment on May 10, 2002. Neither defendant nor any attorney on their behalf attended the hearing. The District Court inquired of counsel for the State whether she had heard at all from Mr. Green or anyone on behalf of Polymer, to which the State's counsel responded as follows:

> We do get correspondence regarding efforts to float different remediation plans, things of that nature, but there has neither been a formal or informal request on the part of Kevan Green or Polymer Applications to extend the time to answer in this case, and we are not aware of any answer in this case. .

Oral Argument Transcript, May 10, 2002, at 4.

That same day, May 10, 2002, the District Court granted the State's motion and entered a default judgment against Defendants. Among other things, the default judgment ordered Defendants to provide the State with access to the Site, entered judgment against Defendants in the amount of $1,872,846.80, and declared Defendants liable for all response costs incurred in the future in remediating the Site. On May 14, 2002, the clerk mailed notice of entry of the default judgment to both Defendants.

Nearly a full year passed before Mr. Green, proceeding *pro se* as "Defendant CEO of Polymer Applications, Inc." moved the District Court on May 7, 2003 to vacate the default judgment on grounds that Defendants had not received notice of the motion for default judgment and they had meritorious defenses to the State's complaint. The State opposed Defendants' motion, and Defendants ultimately retained counsel who filed appearances on their behalf. The District Court denied

Defendants' motion in a lengthy opinion on June 18, 2004. This appeal followed.

## DISCUSSION

### I.

Rule 55 of the *Federal Rules of Civil Procedure* provides a two-step process for obtaining a default judgment. The first step is to obtain a default. When a party against whom affirmative relief is sought has failed to plead or otherwise defend, a plaintiff may bring that fact to the court's attention, and Rule 55(a) empowers the clerk of the court to enter a default against a party that has not appeared or defended. Having obtained a default, a plaintiff must next seek a judgment by default under Rule 55(b). Rule 55(b)(1) allows the clerk to enter a default judgment if the plaintiff's claim is for a sum certain and the defendant has failed to appear and is not an infant or incompetent person. *See* Fed. R.Civ.P. 55(b)(1). "In all other cases," Rule 55(b)(2) governs, and it requires a party seeking a judgment by default to apply to the court for entry of a default judgment.

■■■ A court may set aside any default that has entered for good cause shown, and if a judgment has entered on the default, the court is authorized to set the judgment aside in accordance with the provisions of Rule 60(b). Fed.R.Civ.P. 55(c). Under Rule 60(b), a district court may vacate a judgment for any of the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence . . .; (3) fraud . . ., misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no

longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Fed.R.Civ.P. 60(b). A motion to vacate a default judgment is " 'addressed to the sound discretion of the district court.' " *State Street Bank & Trust Co. v. Inversiones Errazuriz Limitada,* 374 F.3d 158, 166 (2d Cir.2004) (quoting *SEC v. McNulty,* 137 F.3d 732, 738 (2d Cir.1998)). However, we have expressed a strong "preference for resolving disputes on the merits." *Powerserve Int'l, Inc. v. Lavi,* 239 F.3d 508, 514 (2d Cir.2001) (citation omitted). As the District Court rightly recognized in its opinion denying Defendants' motion to vacate, a default judgment is "the most severe sanction which the court may apply." *Cody v. Mello,* 59 F.3d 13, 15 (2d Cir.1995) (citations omitted). A "trial court's desire to move its calendar should not overcome its duty to do justice." *Id.* Accordingly, in ruling on a motion to vacate a default judgment, all doubts must be resolved in favor of the party seeking relief from the judgment in order to ensure that to the extent possible, disputes are resolved on their merits. *See Powerserve,* 239 F.3d at 514.

■■■ In this case, Defendants argue that the District Court should have set aside the default judgment for two reasons: first, the judgment was void under Rule 60(b)(4) because Defendants never received notice of the State's motion for default judgment; second, and in any event, the judgment was voidable under Rule 60(b)(6) because Defendants did not willfully fail to answer the complaint, they have meritorious defenses to the State's action and the State would not be prejudiced by vacating the judgment. We review a District Court's denial of a motion to vacate a default judgment for abuse of discretion. *See State Street,* 374 F.3d at

166. However, we review *de novo* a District Court's legal interpretation of the *Federal Rules of Civil Procedure* and review for clear error any factual findings that underlie the court's resolution of a Rule 60(b) motion. *See id.* at 174; *Jarvis v. Ford Motor Co.,* 283 F.3d 33, 59 (2d Cir.2002); *Unicorn Tales, Inc. v. Banerjee,* 138 F.3d 467, 468 (2d Cir.1998).

## II.

■ In arguing that the default judgment was void under Rule 60(b)(4), Defendants invoke language from Rule 55(b)(2) that requires a party seeking a default judgment to provide at least three days' advance written notice to any party that has "appeared in the action" and against whom judgment is sought. *See* Fed. R.Civ.P. 55(b)(2) ("If the party against whom judgment by default is sought has appeared in the action, the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application."). There is no dispute in this case that the State failed to provide advance notice of its motion for default judgment to Defendants. According to Defendants, that failure renders the default judgment void under Rule 60(b)(4).

■ By its terms, Rule 55(b)(2) requires advance written notice only if the party against whom a default judgment is sought has "appeared in the action." Fed. R.Civ.P. 55(b)(2). Ordinarily, an appearance in an action requires a formal submission to the Court. *See Key Bank of Maine v. Tablecloth Textile Co.,* 74 F.3d 349, 353 (1st Cir.1996). And Defendants acknowledge, as they must, that they never formally appeared in this action before the State obtained the default judgment. However, Defendants argue that their telephone calls and correspondence with the State and its counsel following the filing of the complaint amounted to an "informal" appearance that was sufficient to trigger the notice requirement of Rule 55(b)(2).

Circuits are divided on whether anything less than a formal appearance is necessary to actuate the notice requirement of Rule 55(b)(2). The prevailing view is that "the notice requirement contained in Rule 55(b)(2)" applies not only to parties who have formally appeared, but also to "those parties who, although delaying in a formal sense by failing to file pleadings within the twenty-day period, have otherwise indicated to the moving party a clear purpose to defend the suit." *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe,* 432 F.2d 689, 691 (D.C.Cir.1970) (per curiam); *see also Rogers v. Hartford Life & Accident Ins. Co.,* 167 F.3d 933, 936–37 (5th Cir.1999); *Key Bank,* 74 F.3d at 353; *In re Roxford Foods, Inc.,* 12 F.3d 875, 881 (9th Cir. 1993); *Lutomski v. Panther Valley Coin Exch.,* 653 F.2d 270, 271 (6th Cir.1981) (per curiam). This approach appears to have been adopted first by the District of Columbia Circuit in *H.F. Livermore,* which found it consistent with "the policy underlying the modernization of federal procedure, namely, the abandonment or relaxation of restrictive rules which prevent the hearing of cases on their merits." 432 F.2d at 691.

The Seventh Circuit, by contrast, has "rejected this broad interpretation of Rule 55(b)(2)" and strictly construes the term "appearance" to require a party to make "some presentation or submission *to the district court* in the pending action." *Zuelzke Tool & Eng'g Co. v. Anderson Die Castings, Inc.,* 925 F.2d 226, 230 (7th Cir. 1991) (emphasis in original). In the view of the Seventh Circuit, "it is a disservice to the legal system to distort the meaning of

a concrete term such as 'appearance' in order to provide a mechanism to save a party from a default judgment." *Id.; see also Town & Country Kids, Inc. v. Protected Venture Inv. Trust # 1, Inc.,* 178 F.R.D. 453, 455 (E.D.Va.1998) (requiring a submission to the court) (citing *Zuelzke,* 925 F.2d at 230).

We find it unnecessary in this case to resolve this issue. For every court that has embraced the concept of an informal appearance under Rule 55(b)(2) has required, at a minimum, that the defaulting party, in communicating with the moving party, express "a clear intention to defend" the suit. *In re Roxford,* 12 F.3d at 881; *see also Rogers,* 167 F.3d at 936–37; *Key Bank,* 74 F.3d at 353; *Lutomski,* 653 F.2d at 271; *H.F. Livermore,* 432 F.2d at 691. In this case, however, Defendants' communications with the State fell far short of this threshold. Therefore, even if an informal appearance would entitle a party to advance notice under Rule 55(b)(2)—and we expressly do not decide that issue—Defendants' communications with the State in this case did not rise to the level of an "appearance" under Rule 55(b)(2) even under the most liberal construction of that term. Accordingly, Defendants were not entitled to advance notice of the State's default judgment motion under Rule 55(b)(2).

The District Court described the communications between Defendants, and their counsel, and the State as follows:

In June 2001, Green sent plaintiff's counsel a ten-page document entitled "POLYMER APPLICATIONS, Proposed Remediation Actions" which essentially consisted of an unsigned narrative of possible remediation actions, but contained no documentation of any funding sources to cover the cost of cleanup. Plaintiff's counsel responded to the document by sending Blum a letter reiterating that the [State] would not discuss any plan for remediation with Green absent documentation showing his ability to cover the cost of doing so. There were several other communications between Blum and plaintiff's counsel, wherein Blum claimed that he "did not understand" what the [State] wanted. The [State] again reiterated that it was seeking evidence of Green's financial ability to pay for the cleanup. In a letter dated July 18, 2001, Blum told the [State] that Green would endeavor to "provide additional documentation as it becomes available." Blum never provided the requested documents. That was the last communication between Blum and the [State].

Nine months later, on or about April 30, 2002, defendant Green sent a letter to the [State] proposing to lease a warehouse on the contaminated site. The letter was forwarded to [State]'s counsel, who responded expressing concern for the safety of the tenant.

*Green,* 2004 WL 1375555, at *3, 2004 U.S. Dist. Lexis 11624, at *8–*9.[1]

As is apparent from the foregoing summary, at no point during the period from March 2001 (when this lawsuit was filed) to May 2002 (when the District Court heard the State's motion for default judgment) did Defendants ever assert any defense to the State's claims, point out any weaknesses in the substance of the State's lawsuit, or in any other way express an intent to defend the suit. At best, Defendants informed the State of their willingness to

---

**1.** The District Court rejected Defendants' argument that the State obtained the default judgment by fraudulently misrepresenting the nature of the State's communications with Defendants. On appeal, Defendants do not challenge this aspect of the District Court's decision.

settle the action, rather than their intent to defend against it. Although in certain circumstances courts have been willing to find that a party had informally appeared in an action based on settlement discussions, in each of those cases the defendant clearly indicated to the plaintiff that if settlement negotiations failed, the defendant would diligently defend the suit. *See Key Bank*, 74 F.3d at 353–54 (letter made clear defendant's understanding that if plaintiff determined that negotiations had failed, it would notify defendant so it could retain counsel and file the appropriate pleadings); *H.F. Livermore*, 432 F.2d at 691 (letter indicated that "if appellant knew the negotiations ... were not taken seriously by the appellee, appellant would join issue in court promptly"). Here, there was no such indication in any of the parties' letters and phone calls. In fact, there is ample support in the record for the District Court's finding that Defendants' overtures to the State simply appear to have been part of Defendants' "overall plan to delay the proceedings and remediation of the site," rather than any sincere attempt to settle the action. *Green*, 2004 WL 1375555, at *6, 2004 U.S. Dist. Lexis 11624, at *17.

As noted in the State's affidavit in support of the default judgment, Defendants' counsel did on one occasion raise the possibility with the State that Defendants might seek an extension of time to respond to the complaint. However, there is no merit in Defendants' suggestion that this lone remark, made shortly after the action was filed and long before the State had even obtained a default against Defendants, was sufficient to clearly express Defendants' intention to defend the lawsuit. *See Bermudez v. Reid*, 733 F.2d 18, 22 n. 8 (2d Cir.1984) (single letter requesting an extension of time did not constitute an appearance); *cf. Lutomski*, 653 F.2d at 271–72 (finding an informal appearance where plaintiffs *granted* Defendants' numerous requests for extensions of time to respond). To the contrary, Defendants' complete inaction even after being informed by the clerk of the court that they had been defaulted for their failure to appear buttresses this Court's conclusion that Defendants never indicated any intention of defending against this action.

In sum, even assuming (though not deciding) that in appropriate circumstances an "informal" appearance might suffice to trigger the notice requirements of Rule 55(b)(2), Defendants did not informally appear in this action because their communications with the State did not clearly indicate an intent to defend against the State's claims. It follows, therefore, that Defendants were not entitled to notice of the State's default judgment motion under Rule 55(b)(2) and the default judgment that entered upon the State's motion was not void for lack of notice.[2]

---

2. The District Court, which assumed *arguendo* that Defendants had informally appeared in the action and therefore were entitled to notice under Rule 55(b)(2), concluded that the State's failure to provide notice under Rule 55(b)(2) did not render the default judgment void under Rule 60(b)(4), but merely voidable under Rule 60(b)(6). Circuit courts have also divided on the issue of whether a failure to provide the notice required by Rule 55(b)(2) makes the default judgment void under Rule 60(b)(4) or only voidable under Rule 60(b)(6). *Compare Planet Corp. v. Sullivan*, 702 F.2d 123, 126 n. 2 (7th Cir.1983), *Lutomski*, 653 F.2d at 271, *Port–Wide Container Co. v. Interstate Maint. Corp.*, 440 F.2d 1195, 1196 (3d Cir.1971) (per curiam), *and Winfield Assocs. v. Stonecipher*, 429 F.2d 1087, 1091 (10th Cir.1970), *with Savoretti v. Rodriguez–Jiminez*, 252 F.2d 290, 290 (5th Cir.1958) (per curiam) *and In re Roxford Foods, Inc.*, 12 F.3d 875, 881–82 (9th Cir.1993). *See also Press v. Forest Labs. Inc.*, 45 F.R.D. 354, 357 (S.D.N.Y. 1968). Because we conclude that on the facts of this case, Defendants were not entitled to notice under Rule 55(b)(2), we have no occa-

### III.

Defendants also argue that even if the default judgment is not void for lack of notice, the judgment is nonetheless voidable under Rule 60(b)(6), and that the lack of notice should be considered as one of several factors in determining whether to vacate a default judgment. Because we find that there was no failure of notice required by Rule 55(b)(2), and because the remainder of Defendants' argument essentially raises an issue of excusable neglect, we construe the Defendants' motion to vacate as one pursuant to Rule 60(b)(1). We have often emphasized that:

> [w]hen a district court decides a motion to vacate a default judgment pursuant to the provisions of Rule 60(b), the court's determination must be guided by three principal factors: "(1) whether the default was willful, (2) whether the defendant demonstrates the existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will cause the nondefaulting party prejudice."

*State Street*, 374 F.3d at 166–67 (citing *Mc Nulty*, 137 F.3d at 738); *see also Am. Alliance Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 59 (2d Cir.1996); *Davis v. Musler*, 713 F.2d 907, 915 (2d Cir.1983).[3] The District Court applied this three-part test in assessing Defendants' motion to set aside the default and found that all three factors weighed against granting Defendants relief from the default judgment. Defendants argue that each of the District Court's findings was erroneous. We disagree. The District Court's factual conclusions are amply supported by the record. *See, e.g., State Street*, 374 F.3d at 174.

A. *Willfulness.* " '[T]he basic purpose of default judgment is to protect parties from undue delay-harassment.' " *Am. Alliance*, 92 F.3d at 60 (quoting *Baez v. S.S. Kresge Co.*, 518 F.2d 349, 350 (5th Cir.1975) (per curiam)). Thus, we have held that wilfulness in the context of a judgment by default requires "something more than mere negligence," such as "egregious or deliberate conduct," although "the degree of negligence in precipitating a default is a relevant factor to be considered." *Id.* at 60, 61.

The District Court found that Defendants willfully defaulted in this case and that their failure to file an answer was a "part of an overall plan to delay the proceedings and remediation of the site."

sion to decide, and therefore express no opinion on, whether a default judgment entered without the required notice under Rule 55(b)(2) is void or merely voidable.

**3.** In the past we have stated that motions under Rule 60(b)(6) may not be based on excusable neglect and are proper only where the asserted grounds for relief are not recognized in the other clauses of Rule 60(b). *See Nemaizer v. Baker*, 793 F.2d 58, 63 (2d Cir. 1986); *Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne de Navigation*, 605 F.2d 648, 656 n. 8 (2d Cir.1979); *see also United States v. Cirami*, 535 F.2d 736, 741 (2d Cir. 1976) (stating that relief under Rule 60(b)(6) requires a showing of "exceptional circumstances" or "extreme hardship"). *McNulty*, however, involved a motion to vacate under Rule 60(b)(1) and Rule 60(b)(6), and we applied the three traditional factors—willfulness, meritorious defense, and prejudice—without distinguishing between the different provisions. *McNulty*, 137 F.3d at 738–41.

In this case, any potential distinction between Rule 60(b)(1) and Rule 60(b)(6) does not affect our analysis or the result. Defendants initially moved to vacate the default judgment under both provisions (among others) and have emphasized Rule 60(b)(6) because of the notice issue. Aside from the notice issue, Defendants have essentially argued excusable neglect and have sought to vacate the judgment based on the three factors traditionally applied in the Rule 60(b)(1) context. Moreover, there are no other allegations of "exceptional circumstances" that would warrant relief under Rule 60(b)(6).

*Green,* 2004 WL 1375555, at \*6, 2004 U.S. Dist. Lexis 11624, at \*17; *see also Am. Alliance,* 92 F.3d at 60 ("[W]e have refused to vacate a judgment where the moving party had apparently made a strategic decision to default.") (citations omitted). On the record before us, and in particular, after reviewing the letters exchanged between Defendants' counsel, Mr. Blum, and Assistant Attorney General Linda White, we cannot say that the District Court's finding was clearly erroneous. Notably, Defendants offered no explanation for their counsel's failure to appear or seek any extension of time to respond to the complaint. *See McNulty,* 137 F.3d at 738 ("the court may find a default to have been willful where the conduct of counsel or the litigant was egregious and was not satisfactorily explained"). Nor did they provide any justification for their own failure to take action after receiving notice that the clerk had entered a default against them, thereby clearly signaling to Defendants that their counsel had not taken the requisite steps to defend their interests in the litigation. *See* Fed.R.Civ.P. 55(c) (a default may be vacated for "good cause shown," a less rigorous standard than applies under Rule 60(b)). In these circumstances, the District Court did not err in finding that Defendants and their counsel had wilfully and deliberately failed to answer the complaint.

 B. *Meritorious Defense.* The existence of a meritorious defense is a key factor in the Rule 60(b) analysis. As a consequence, we have held that "the absence of such a defense is sufficient to support [a] district court's denial" of a Rule 60(b) motion. *State Street,* 374 F.3d at 174. "In order to make a sufficient showing of a meritorious defense ... the defendant need not establish his defense conclusively, but he must present evidence of facts that, if proven at trial, would con-

stitute a complete defense." *McNulty,* 137 F.3d at 740 (internal citations and quotation marks omitted). We find no error in the District Court's conclusion that Defendants failed to raise a meritorious defense.

 The State submitted detailed affidavits and other submissions in support of each of the five elements required to establish a prima facie case of CERCLA liability. *See Goodrich Corp. v. Town of Middlebury,* 311 F.3d 154, 168 (2d Cir. 2002) (listing elements). Defendants argue that the State cannot satisfy the final element, which requires that "the costs and response actions conform to the national contingency plan," because according to Defendants, remediation could be accomplished at a lower cost. *Id.* Defendants' argument clearly misses the mark. The State is not required to strictly minimize costs, but simply to conform its response costs to the national contingency plan. *See In re Bell Petroleum Servs., Inc.,* 3 F.3d 889, 906 n. 22 (5th Cir.1993) (all costs incurred by government that are not inconsistent with the national contingency plan are presumed reasonable). Defendants have never argued, much less offered any evidence suggesting, that the State's response costs and actions are inconsistent with the national contingency plan. Therefore, the District Court's conclusion that the State had established a prima facie case of liability against the Defendants was not clearly erroneous.

Defendants also assert certain affirmative defenses under CERCLA. Specifically, Defendants claim that they were entitled to the benefit of "third party" and "act of god" defenses to CERCLA liability. *See* 42 U.S.C. § 9607(b). However, Defendants failed to submit to the District Court even a single affidavit or any other evidence supporting their asserted defenses. The District Court, therefore, rightly concluded that Defendants' assertions

amounted to little more than conclusory denials. We have previously held that a "defendant must present more than conclusory denials when attempting to show the existence of a meritorious defense." *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 173 (2d Cir.2001). Defendants have failed to satisfy this standard. As a result, the District Court did not err in concluding that Defendants failed to raise a meritorious defense.

■ C. *Prejudice.* The final factor a court must consider on a Rule 60(b) motion is whether and to what extent, vacating the default judgment will prejudice the non-defaulting party. Some delay is inevitable when a motion to vacate a default judgment is granted; thus, "delay alone is not a sufficient basis for establishing prejudice." *Davis,* 713 F.2d at 916. Something more is needed. For example, delay "may thwart plaintiff's recovery or remedy. It also may result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." 10A *Charles A. Wright, et al., Fed. Practice & Procedure: Civil* § 2699, at 169 (3d ed.1998), *cited in Davis,* 713 F.2d at 916. Again, we find no error in the District Court's conclusion that Defendants failed to show a lack of prejudice to the State.

Admittedly, the State's claim of prejudice would be stronger had it not allowed nearly a year to lapse from entry of default before moving for a default judgment. However, the State also provided a detailed and unrebutted affidavit from an environmental engineer, indicating that delaying the remediation of the Site, which has been at a stand-still since 1998, could put at risk the State's ability to obtain the funds necessary to proceed with its remediation plan and could endanger the public health and safety through the continued spread of ground water contaminants from

the Site. Defendants offered no evidence suggesting that the State would not suffer prejudice, apart from pointing out the State's delay in moving for default judgment. Thus, on the record of this case, it was not clear error for the District Court to conclude that vacating the default judgment would prejudice the State in ways beyond mere delay.

■ Having concluded that the District Court did not err in finding that all three factors—willfulness, lack of a meritorious defense, and resulting prejudice to the non-defaulting party—weighed against vacating the default judgment, we hold that the District Court did not abuse its discretion in denying Defendants' motion to vacate the default judgment. *See, e.g., McNulty,* 137 F.3d at 741. Accordingly, we affirm the District Court's refusal to set aside the default judgment it had previously entered against Defendants.

### IV.

There are two remaining issues, each of which concerns damages. First, both the State and Defendants agree that the District Court's judgment with respect to past damages should be modified from $1,872,846.80, to reflect the corrected amount of $1,334,168.62. Accordingly, we hereby modify the judgment of the District Court to correct the amount of past damages awarded from $1,872,846.80 to $1,334,168.62.

■ Second, Defendants also argue that they are entitled to a hearing to determine the amount of any response costs the State may incur in the future. We believe that the Defendants' request for a hearing on the amount of any future damages is premature. The District Court's default judgment merely declared Defendants liable for all of the State's future response costs; it did not award the State

any specific sum. The judgment states: "Default Judgment is entered against Defendants for all response costs the State incurs in the future in remediating the Site pursuant to § 9613(g)(2)."

The State sought recovery of its future response costs under 42 U.S.C. § 9607, which allows it to recover "all costs of removal or remedial action incurred by the United States Government or a State ... not inconsistent with the national contingency plan." 42 U.S.C. § 9607(a)(4)(A). The procedure for recovery of these costs is set forth in 42 U.S.C. § 9613, which provides in relevant part:

> In any such action described in this subsection, the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages.

42 U.S.C. § 9613(g)(2). As the Court of Appeals for the Sixth Circuit has explained, "[i]n providing for the recovery of response costs, Congress included language to ensure that a responsible party's liability, once established, would not have to be relitigated.... The entry of declaratory judgment as to liability is mandatory. The fact that future costs are somewhat speculative is no bar to a present declaration of liability." *Kelley v. E.I. DuPont de Nemours & Co.*, 17 F.3d 836, 844 (6th Cir.1994) (internal citations and quotation marks omitted); *see also United States v. USX Corp.*, 68 F.3d 811, 819 n. 17 (3d Cir.1995) ("Essentially, [§ 9613(g)(2)] mandates collateral estoppel effect to a liability determination."); *cf. New York v. Almy Bros., Inc.*, 866 F.Supp. 668, 681 (N.D.N.Y.1994) (declaring defendants "liable for the State's future response costs").

Pursuant to § 9613(g)(2), the State may then bring a "subsequent action or actions under section 9607 of this title for further response costs at the ... facility ... at any time during the response action, but [must commence the action] no later than 3 years after the date of completion of all response action." As the State itself acknowledges, if and when the State brings an action to recover the future costs of remediating the Site, Defendants will be entitled at that time to raise any appropriate objections to the amount of the State's costs—for example, that the costs were not actually incurred or that they were inconsistent with the national contingency plan—though Defendants will not be entitled to litigate their liability for such costs. *See USX Corp.*, 68 F.3d at 819 n. 17; *Kelley*, 17 F.3d at 845. Therefore, a hearing on the amount of the State's future response costs is not necessary or appropriate at this time.

## CONCLUSION

We affirm the judgment of the District Court, as modified.