**ODFJELL SEACHEM A/S, Plaintiff,**

v.

**CONTINENTAL DE PETROLS ET IN-VESTMENTS SA a/k/a Continentale Des Petroles et d'Investissements a/k/a CPI SA, and Society Nationale De Commercialisation Des Produits SA a/k/a Societe Nationale De Commercialisation De Produits Petroliers a/k/a SONACOP, Defendants.**

**No. 08 Civ. 5024 (JSR).**

United States District Court,
S.D. New York.

May 12, 2009.

---

**79.** *See* 3/12/09 Declaration of Gregory P. Joseph.

**80.** *See id.* ¶¶ 3, 4.

Lissa Diane Schaupp, Michael J. Frevola, Marc L. Antonecchia, Holland & Knight LLP, New York, NY, for Plaintiffs.

Sol Kodsi, Law offices of Sol Kodsi, New York, NY, for Defendants.

## MEMORANDUM ORDER

JED S. RAKOFF, District Judge.

On April 29, 2009, the Court issued a "bottom-line" Order in which the Court denied the motion of defendants Continental de Petrols et Investments SA a/k/a Continentale des Petroles et d'Investissements ("CPI") and Societe Nationale de Commercialisation de Produits Petroliers ("SONACOP") to vacate the attachment previously entered in this case, granted the motion of plaintiff Odfjell Seachem A/S

("Odfjell") for reconsideration of the vacatur of the judgment entered against the defendants on January 23, 2009, and reinstated that default judgment. This Memorandum Order states the reasons for these determinations and directs the entry of final judgment.

This is an action seeking a maritime attachment under Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions and the enforcement of an arbitration judgment in the amount of $790,141.28 issued by the Commercial Court in London on December 14, 2004 against defendants CPI and SONACOP. *See* Ex. 1 to the Declaration of Rafikou Alabi dated March 2, 2009 ("Alabi Decl.") (the "English judgment"); Ex. 2 to Alabi Decl. (the accompanying Order); *see also* Affirmation of Sol Kodsi dated February 11, 2009, submitted with defendants' Order to Show Cause ¶ 2.

By way of background, in November, 1974, Benin's petroleum industry was nationalized by presidential degree (number 74–70 dated Dec. 4, 1974), and a state monopoly was declared. *See* Affidavit of Maitre Severin Ludovic Maxime Quenum, sworn to February 10, 2009, submitted with the defendants' Order to Show Cause("Quenum Aff. Feb. 10") ¶ 5. Shortly thereafter, SONACOP was created as a state-owned company to operate that monopoly. *Id.* ¶¶ 6–14. In 1999, however, efforts were begun to privatize SONACOP. A private, separate entity, CPI, was created, *id.* ¶ 15, and in April, 1999, 55% of the shares of SONACOP were assigned to CPI. *Id.* ¶ 18. Thus, for a time, both SONACOP and CPI were operative. In 2008, however, after CPI was found to have engaged in systemic fraud, *see* Quenum Aff. Feb. 10 ¶ 25; Ex. 12 thereto at 11–13, the assignment of SONACOP shares to CPI was cancelled, and SONA-

COP was effectively "re-nationalized." Quenum Aff. Feb. 10 ¶ 36.

The underlying dispute between the parties arose during the interim period in which both CPI and SONACOP were active. During this period, "SONACOP/CPI," *see id.* ¶ 41 (the hybrid label is directly quoted from the Quenum Aff. Feb. 10) chartered a ship called BOW CEDAR from plaintiff Odfjell for carriage of jet fuel, gasoline, and gas oil from Bahrain to Cotonou, Benin. The Charter Party was subsequently cancelled, but disputes arose between Odfjell and SONACOP/CPI under the Charter Party with respect to, *inter alia,* an alleged liability to Odfjell for laytime and demurrage that had accrued prior to the repudiation of the Charter Party. As a result, Odfjell sued SONACOP/CPI in the United Kingdom in the Commercial Court of the Queen's Bench Division and received a judgment in its favor on December 15, 2004 in the amount of $790,141.28. *Id.* ¶ 41.

The caption in the arbitral action reflects the fact that that action was brought against both CPI and SONACOP, and the eventual arbitral judgment in Odfjell's favor was against both entities. Nothing in the arbitral judgment suggests that the defendants are not each liable for the full amount of the judgment, and, in any event, as the result of the re-nationalization, SONACOP, both in its own right and as effectively the successor-in-interest to CPI, is liable for the full judgment.

After obtaining this judgment, plaintiff Odfjell sought to have it recognized in the Benin courts by applying for "exequatur" on November 30, 2005. *See* Ex. 2 to Supplemental Declaration of Rafikou Alabi dated March 31, 2009 ("Alabi Supp. Decl."). The application for exequatur was denied by a Cotonou court on April 7, 2008, but further proceedings are pending.

In the meantime, the plaintiff sought recognition of the English judgment in this Court by filing its Rule B action on May 30, 2008. On June 2, 2008, the undersigned issued a Writ of Attachment and Garnishment and Order for Issuance of a Writ of Attachment and Garnishment, and the plaintiff subsequently attached $393,845.00 at Citibank, N.A. and $393,296.28 at Deutsche Bank Trust Company Americas for a total of $787,141.28, *i.e.*, almost the entire amount of the judgment. *See* Quenum Aff. Feb. 10 ¶ 45.

After Odfjell brought this action and duly served SONACOP, SONACOP failed to appear, and Odfjell therefore moved for default judgment, which was entered on January 23, 2009. On February 9, 2009, however, several representatives of SONACOP came to the courthouse based on erroneous information they had received from their counsel that oral argument in the matter would be heard that afternoon. It was then that they learned of the default judgment. They protested, and at a hastily-convened conference on February 13, 2009, the Court, without any detailed consideration of the applicable law, vacated the default judgment in light of the representation by SONACOP's counsel that they had been misinformed. Shortly thereafter, however, plaintiff's counsel learned further information bearing on the vacatur that had not been reasonably available on February 13, 2009, and consequently moved for reconsideration. *See* transcript, 4/3/09. On April 3, 2009, after reviewing the parties' written submissions, the Court heard oral argument both on the motion for reconsideration of the vacatur of the default judgment and on SONACOP's motion to vacate the attachment that had led to the seizure of its funds.

■ In rather too precipitously vacating the default judgment on February 13, the Court neglected to take detailed account of the relevant case law, which obliges the Court to consider three factors: "whether the default was willful, (2) whether the defendant demonstrates the existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will cause the nondefaulting party prejudice." *State of New York and Erin D. Crotty v. Kevan M. Green and Polymer Applications, Inc.*, 420 F.3d 99, 108 (2d Cir.2005) (quoting *State Street Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 166–67 (2d Cir.2004)). Now that the Court has had the opportunity to consider these factors, in the context of the new evidence put before the Court in plaintiff's motion for reconsideration, the Court concludes that all three factors favor plaintiff.

■ As to the first factor, "willfulness" requires "something more than mere negligence, such as egregious or deliberate conduct, although the degree of negligence in precipitating a default is a relevant factor to be considered." *Crotty*, 420 F.3d at 108 (quoting *Am. Alliance Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 60, 61 (2d Cir.1996)(quotation marks omitted)). Here, plaintiff, after properly serving defendants, went further and gave written notice to its adversary of the various in-court conferences, and advised them that, should they fail to move, answer, or even just appear in the proceedings, plaintiff would seek default judgment. *See* transcript, 4/3/09. In response, as the Court fully learned only at the reconsideration hearing, defendants not only failed to retain New York counsel to represent them but also sought instruction about U.S. federal practice from a Parisian lawyer. *See id.* That he gave them erroneous advice is hardly surprising. This, then, is a case, not just of negligence, but of willful neglect.

■ As to the second factor, it is now apparent from the reconsideration hearing

that defendants lack any meritorious defense. *See Crotty*, 420 F.3d at 109 (characterizing the existence of a meritorious defense as the "key factor"). "In order to make a sufficient showing of a meritorious defense ... the defendant need not establish his defense conclusively, but he must present evidence of facts that, if proven at trial, would constitute a complete defense." *SEC v. McNulty*, 137 F.3d 732, 740 (2d Cir.1998) (internal quotation marks and citation omitted).

Here, SONACOP represents that its defense is that, as a government instrumentality of Benin, it is immune to suit and that this Court therefore lacks subject matter jurisdiction under the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. §§ 1330(a)-(c), 1332(a)(4), 1391(f), 1441(d), 1602–1611 (2008) ("FSIA"). The Court finds, however, that the defendant has implicitly but irrevocably waived its FSIA defense in the course of its dealings with the plaintiff and that the Court therefore properly exercised its subject matter jurisdiction in this action. *See Verlinden B.V. v. Central Bank of Nigeria*, 488 F.Supp. 1284, 1301–1302 (S.D.N.Y.1980) ("Proof of implicit waiver absolutely defeats the assertion of sovereign immunity."); *see also* 28 U.S.C. § 1605(a)(1) and its legislative history (waiver occurs where the foreign state "has agreed to arbitration in another country or where a foreign state has agreed that the law of another country should govern a contract." H.R.Rep. No. 94–1487 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6617).

Here, it is undisputed that defendants had agreed to arbitral resolution of the dispute in the Commercial Court in London, and a decision in favor of the plaintiff was issued on December 15, 2004. *See* Exs. 1 and 2 to the Alabi Decl. After that judgment was entered, moreover, the defendants entered into an agreement with the plaintiff by which they agreed to pay the judgment in installments, and further agreed that "[i]f [defendants] fail to pay any one of the installments on time, you [plaintiff] would still be free to enforce any outstanding sums against [defendants]." *See* Declaration of Michael Brooks dated March 2, 2009 ("Brooks Decl.") ¶ 7; Ex. 4 attached thereto at 5. The combination of the submission of the dispute to arbitration and the agreement to permit plaintiff to enforce the subsequent judgment if the installments were not paid—which is precisely what precipitated the instant action—is wholly inconsistent with any assertion of FSIA immunity.

██ Finally, as to the third factor—prejudice—plaintiff, which has spent years trying to collect its 2004 judgment against defendants, and is now, at last, almost fully secured by virtue of the instant attachment, would suffer obvious prejudice if the default judgment was vacated.

In short, all three operative factors counsel against vacating the default judgment. Consequently, the Court, on reconsideration, vacates the prior vacatur of the default judgment, reinstates that judgment, and rejects defendants' cross-motion to vacate the attachment. Consequently, the Clerk is directed to enter final judgment against the defendants, jointly and severally, in the sum of $790,141.28 and allow plaintiff to levy upon the attached funds for up to that full amount. The Clerk of the Court is also directed to close document number 15 on the docket of this case.

SO ORDERED.