**Tim SAUNDERS, Plaintiff,**

v.

**Sean David MORTON, Joshua Weber, Daryl Weber, Melissa Morton, 27 Investments LLC, Magic Eight Ball Distributing, Inc., Vajra Productions LLC, Delphi Associates Investment Group, and Fraser Valley Trading, Defendants.**

No. 5:09–cv–125.

United States District Court, D. Vermont.

Aug. 18, 2010.

---

Mary P. Kehoe, Lisman, Webster & Leckerling, P.C., Burlington, VT, Richard J. Gerace, Esq., Philadelphia, PA, for Plaintiff.

*OPINION AND ORDER ADOPTING MAGISTRATE JUDGE'S REPORTS AND RECOMMENDATIONS*

(Docs. 63 & 64)

CHRISTINA REISS, District Judge.

This matter came before the court for review of the Magistrate Judge's Report and Recommendations filed on June 28, 2010 (Doc. 63 & 64).

The Magistrate Judge recommended that the court grant Plaintiff Tim Saunders's motion to dismiss Defendant, Joshua Weber, whom Plaintiff has been unable to serve (Doc. 58).

The Magistrate Judge also recommended the court grant in part Defendant Daryl Weber's Motion for Relief from a Final Judgment, Order or Proceeding (the "Motion for Relief") (Doc. 56). Although styled as a motion pursuant to Fed.R.Civ.P. 60(b), the Magistrate Judge properly considered the motion as one to set aside the default under Fed. R.Civ.P. 55(c). The Magistrate Judge recommended denying Defendant Daryl Weber's additional requests to strike the Complaint and dismiss the cause of action, and to remove the case to another jurisdiction.

Finally, the Magistrate Judge recommended that the court grant Plaintiff's Motion for Entry of Default Judgment (Doc. 29) against Defendants, Sean David Morton, Melissa Morton, 27 Investments LLC, Magic Eight Ball Distributing, Inc., Vajra Productions LLC, and Delphi Associates Investment Group, (collectively, "the remaining Defendants"). No objections have been filed.

A district judge must make a *de novo* determination of those portions of a magistrate judge's report and recommendation to which an objection is made. Fed.R.Civ.P. 72(b); 28 U.S.C. § 636(b)(1); *Perez–Rubio v. Wyckoff*, 718 F.Supp. 217, 227 (S.D.N.Y. 1989). The district judge may "accept, reject, or modify, in whole or in part, the magistrate's proposed findings and recommendations." *Perez–Rubio*, 718 F.Supp. at 227. A de novo determination pursuant to Section 636(b)(1) "permit[s] whatever reliance a district court, in the exercise of sound judicial discretion, [chooses] to place on a magistrate's proposed findings and recommendations." *United States v. Raddatz*, 447 U.S. 667, 676, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980).

After careful review of the file and the Magistrate Judge's Report and Recommendations, this court hereby ADOPTS the Magistrate Judge's findings and recommendations in full for the reasons stated therein.

Accordingly, the court GRANTS Plaintiff Saunders's Motion to Dismiss Joshua Weber (Doc. 58) from this lawsuit. Said dismissal is without prejudice.

The court further GRANTS IN PART AND DENIES IN PART Defendant Daryl Weber's Motion for Relief (Doc. 56). Defendant Daryl Weber shall have twenty (20) days from the entry of this Order to file an answer or other responsive pleading. All other relief requested in the Motion for Relief is DENIED.

Finally, the court GRANTS Plaintiff's Motion for Entry of Default Judgment (Doc. 29) against the remaining Defendants, Sean David Morton, Melissa Morton, 27 Investments LLC, Magic Eight Ball Distributing, Inc., Vajra Productions LLC, and Delphi Associates Investment Group. The court agrees that there is no just reason for delay and that pursuant to Fed.R.Civ.P. 54(b), the judgment may be certified as a partial final judgment. *Ginett v. Computer Task Group, Inc.* 962 F.2d 1085, 1092 (2d Cir.1992). Plaintiff's counsel is directed to submit a proposed partial final judgment order, reflecting the amounts the Magistrate Judge concluded have been established, within fifteen (15) days of this Order.

SO ORDERED.

### *REPORT AND RECOMMENDATION*

#### (Docs. 29, 58)

JOHN M. CONROY, United States Magistrate Judge.

Plaintiff Tim Saunders brings this action against various individual and corporate defendants under federal securities laws and several Vermont state law causes of action. (Doc. 1.) Specifically, Saunders seeks to recover the funds he invested into what he claims was a fraudulent investment scheme devised and executed by the named Defendants. Presently before the Court are Saunders' Motion for Default Judgment against Defendants Sean David Morton, Melissa Morton, 27 Investments LLC, Magic Eight Ball Distributing, Inc., Vajra Productions LLC, and Delphi Associates Investment

Group (collectively, "the Defendants"),[1] and Motion to Dismiss Defendant Joshua Weber from this suit. For the reasons set forth below, the Court recommends that each Motion be GRANTED.

### Background

On May 18, 2009, Saunders filed a Complaint alleging that Sean David Morton and the other named Defendants induced Saunders to invest $135,000 into a fraudulent investment scheme. The Complaint alleges what is colloquially known as a "Ponzi scheme," in which investor money is misappropriated for personal use and "to repay earlier investors, avert or settle pending lawsuits, cover up losses, [or] pay expenses." (Compl. ¶ 76.) Saunders alleges that the Defendants made materially false misrepresentations to solicit his investment, and then created false financial statements reporting that Saunders' money was profitably invested in the foreign currency market, when in fact it was either lost through poor investments or not invested at all. *Id.* ¶¶ 37–49. The scheme eventually collapsed when it could no longer support itself with new investor funds, at which point the Defendants broke off contact with Saunders. *Id.* ¶ 52. Eventually, Saunders was informed of the "[c]losure of Vajra Productions LLC, 27 Investments LLC and Magic Eight Ball Distributing." *Id.* ¶ 53. None of the money he invested has been returned.

Pursuant to this Court's Order (Doc. 25), Saunders served the Defendants on November 23, 2009 by leaving a copy of the summons and complaint at the door of Melissa and Sean David Morton's home (Doc. 26–1). *See* V.R.C.P. 4(d)(1); Fed.R.Civ.P. 4(e)(1). Under the Federal Rules of Civil Procedure at that time, the Defendants had 20 days thereafter to serve an Answer. Fed.R.Civ.P. 12(a)(1)(A)(i) (2007). On March 2, 2010, having received neither an Answer nor any other communication from the Defendants, Saunders applied for a clerk's entry of default against the Defendants, and the Clerk entered default the next day. (Doc. 28.) On March 5, 2010, Saunders filed the present Motion for Default Judgment, and the Court scheduled an evidentiary hearing to receive proof concerning damages. (Doc. 32.) Although the Defendants have never appeared in this action, Saunders provided them with more than two weeks notice of the hearing, which convened on April 8, 2010. None of the Defendants appeared at the hearing.[2]

### Discussion

Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment against defendants who have failed to plead or defend.[3] Fed.R.Civ.P. 55; *New York v. Green,* 420 F.3d 99, 104 (2d Cir.2005). The first step is to obtain a clerk's entry of default. Rule 55(a) empowers the clerk to enter default against defendants who have failed to plead or otherwise defend when the plaintiff demonstrates such failure through affidavit. By virtue of defaulting, defendants concede the accuracy of the factual averments made in the complaint as well as their liability arising therefrom. *See, e.g., Greyhound Exhibitgroup, Inc. v. E.L. U.L. Realty Corp.,* 973 F.2d 155, 159 (2d Cir.1992) ("Where it is properly alleged in the complaint, proximate cause—going to liability—is completely and irrefutably established upon the defendant's default."). But allegations in the complaint concerning damages are not deemed to be true at this stage unless they are liquidated or susceptible to mathematical computation

---

1. Saunders also moves for default judgment against Daryl Weber and Fraser Valley Trading, but he has already secured judgment against these Defendants, and each has been terminated from this lawsuit. (Docs. 14, 15.) However, in a separate Report filed today (Doc. 64), the Court recommends that Daryl Weber be reinstated as a party to this litigation with a renewed opportunity to defend.

2. For reasons unexplained, Saunders also provided notice of the evidentiary hearing to Daryl Weber, even though judgment against Weber had already entered. Unlike the Defendants at issue here, Weber *did* appear, ostensibly to challenge the entry of judgment against him. Since then, Weber has filed a Motion for Relief from the Default Judgment pursuant to Rules 55(c) and 60(b). (Doc. 56.) In a separate Report filed today (Doc. 64), the Court recommends granting Weber's Motion, and reinstating him as a Party.

3. All further rule references in this Report and Recommendation are to the Federal Rules of Civil Procedure unless otherwise indicated.

as of the default. *Id.; Credit Lyonnais Securities (USA), Inc. v. Alcantara,* 183 F.3d 151, 155 (2d Cir.1999).

Second, having obtained a default, the plaintiff must next seek a judgment in one of two ways. Rule 55(b)(1) allows the clerk to enter judgment without court involvement when the defendants, who are neither minors nor incompetent, have defaulted for not appearing, and the plaintiff seeks damages of a "sum certain," that is, damages that are liquidated or susceptible to mere arithmetic calculation. In all other cases, Rule 55(b)(2) provides for the court's entry of default judgment. Motions for a court's entry of judgment are "left to the sound discretion of [the] district court," *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 95 (2d Cir.1993), and the court may conduct hearings before entering judgment to determine the amount of damages. Fed.R.Civ.P. 55(b)(2)(B).

In this case, Saunders satisfied the first step by applying for and obtaining default against the Defendants, which the Clerk entered on March 3, 2010. Saunders next moved for default judgment based on the Defendants' complete failure to appear, seeking the recovery of his investment with the Defendants plus interest in addition to reasonable costs and fees. (Doc. 29–2.) Normally, this would present an appropriate case for a clerk's judgment because the Defendants failed to appear and the amount of damages can be easily calculated without further fact-finding. *See KPS & Associates, Inc. v. Designs By FMC, Inc.,* 318 F.3d 1, 19 (1st Cir.2003) (citing with approval the proposition that "[t]he term 'sum certain' in this context contemplates a situation in which, once liability has been established, there can be no dispute as to the amount due, as in actions on money judgments and negotiable instruments."). But because Saunders' Motion did not include any evidentiary verification of his damages, such as an affidavit setting forth the amount owed to him, the Court required a hearing to ascertain damages. (Doc. 32.) Having received evidence from Saunders at the April 8, 2010 hearing, the Court concludes that default judgment against the Defendants is appropriate, and

recommends that Saunders' Motion be granted.

## I. The Court Has Jurisdiction To Enter Judgment

### A. Subject Matter Jurisdiction

The Court has authority to enter judgment only on those claims over which it is has subject matter jurisdiction. *See, e.g., United States v. Forma,* 42 F.3d 759, 762 (2d Cir.1994) (recognizing that a default judgment entered in the absence of subject-matter jurisdiction is void and must be vacated); Fed.R.Civ.P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

In this case, federal question subject matter jurisdiction exists because Saunders' cause of action arises under federal securities law, namely, Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and its implementing regulation, Rule 10b–5, 17 C.F.R. § 240.10b–5. Under Section 27 of the Exchange Act, "[t]he district courts of the United States ... shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder." 15 U.S.C. § 78aa; *see also* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the ... laws ... of the United States."). Additionally, this Court has supplemental jurisdiction over Saunders' state law claims pursuant to 28 U.S.C. § 1367(a), which grants this Court jurisdiction over all claims that "form part of the same case or controversy" as claims over which the Court has original jurisdiction.

To implicate Section 10(b) of the Exchange Act and Rule 10b–5, a plaintiff must allege deception, misrepresentation, or fraud in connection with the sale or purchase of securities. *Ring v. AXA Financial Inc.,* 483 F.3d 95, 97 (2d Cir.2007). Saunders easily satisfies this standard here. As for the fraud, Saunders claims—and by virtue of the default it is undisputed—that Melissa and Sean

David Morton, both individually and through the various corporate Defendants, intentionally made false statements to Saunders about their financial acumen and materially misrepresented how they would use Saunders' money in order to induce his investment. Saunders relied on these misrepresentations to his detriment, losing all of the money he invested with the Defendants.

■ This fraud was in connection with the purchase of securities, because Saunders' investment constitutes a "security" in the form of an "investment contract" as defined by § 3(a)(10) of the Exchange Act, 15 U.S.C. § 78c(a)(10), and Supreme Court case law. Under the broad formulation first articulated in *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 298–99, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946), an "investment contract" is "a contract, transaction, or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of a promoter or third party[.]" *United States v. Leonard*, 529 F.3d 83, 88 (2d Cir. 2008) (quoting *Howey*, 328 U.S. at 298–99, 66 S.Ct. 1100). This "definition 'embodies a flexible rather than a static principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of money of others on the promise of profits.'" *S.E.C. v. Edwards*, 540 U.S. 389, 393, 124 S.Ct. 892, 157 L.Ed.2d 813 (2004) (quoting *Howey*, 328 U.S. at 299, 66 S.Ct. 1100). Accordingly, when determining whether a particular transaction constitutes an "investment contract," courts should look beyond the formal terms of the arrangement and assess whether the reasonable expectation was one of significant investor control, or third-party control over the investor's funds. *Leonard*, 529 F.3d at 85.

Here, the Defendants solicited Saunders' money on the promise of profits based entirely on the Defendants' control over that money. Saunders delivered a total of $135,000, and his expectation, explicitly confirmed by the Defendants' repeated representations, was that he would receive profits based on investments conducted by others on his behalf. This is a paradigmatic "investment contract," and the Court therefore has

subject matter jurisdiction over this suit pursuant to the Exchange Act.

**B. Personal Jurisdiction**

■ District courts in the Second Circuit are not required to determine that they have personal jurisdiction over defendants against whom they enter default judgment for failure to appear. *Norex Petroleum Ltd. v. Access Industries, Inc.*, 416 F.3d 146, 161 (2d Cir.2005). Unlike subject matter jurisdiction, the limitation on personal jurisdiction is an individual due process right that can be waived, and "[a] court entering a default judgment may assume that it has jurisdiction over the defendant when the defendant does not appear in court to contest the judgment." *Id.* (quoting *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 162 F.3d 724, 730 (2d Cir. 1998)). Indeed, establishing personal jurisdiction before entering judgment may be an entirely futile exercise, since defendants are "always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds in a collateral proceeding." *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 706, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982). Thus, upon collateral review, the judgment court's determination that service was proper and that it had personal jurisdiction is not preclusive. *Transaero*, 162 F.3d at 730.

Nonetheless, the Court briefly explains here that Saunders properly executed service upon the Defendants, and that the Defendants are subject to this Court's personal jurisdiction. First, Saunders served the Defendants by leaving a copy of the summons and complaint at the dwelling house or usual place of abode of Melissa and Sean David Morton. Saunders obtained Court permission to execute service in this manner after demonstrating, in accordance with the Vermont and Federal Rules of Civil Procedure, that service by other means could not be made with due diligence. (Doc. 25); Fed. R.Civ.P. 4(e)(1); V.R.C.P. 4(d)(1).

Second, "[i]t has long been the rule in this Circuit that" when a claim under the Exchange Act is involved, "Section 27 of [the Act], which provides for nationwide service of

process, confers personal jurisdiction over the defendants served within the United States." *Steinberg & Lyman v. Takacs,* 690 F.Supp. 263, 265–66 (S.D.N.Y.1988) (internal citation omitted); *see also Kidder, Peabody & Co., Inc. v. Maxus Energy Corp.,* 925 F.2d 556, 562 (2d Cir.1991) ("Section 27 confers personal jurisdiction over a defendant who is served anywhere within the United States."). And given personal jurisdiction established by the Exchange Act, the Court also has personal jurisdiction over the Defendants with respect to Saunders' supplemental state law claims. *See, e.g., Clute v. Davenport Co.,* 584 F.Supp. 1562, 1580 (D.Conn.1984) (upholding supplemental jurisdiction for Connecticut securities law claims in Exchange Act suit).

In sum, the Exchange Act establishes both subject matter jurisdiction over Saunders' claims, and personal jurisdiction over the Defendants. Accordingly, the Court has the authority to enter judgment under Rule 55(b)(2) in this case.

## II. Default Judgment Against the Defendants Is Warranted

█ Having established jurisdiction, the task of entering default judgment is largely ministerial. But for Saunders' failure to submit adequate documentary support of his damages claim, the Clerk would have been *required* to enter default judgment against the Defendants without a hearing and without any inquiry by the Court. *See* Fed. R.Civ.P. 55(b)(1) (explaining that the clerk "must enter judgment" when the criteria for clerk's judgment are satisfied). Now, following the April 8 hearing, the Court is in possession of an affidavit from Saunders that establishes the amount of his loss and the costs he has incurred to date. Specifically, the affidavit states that Saunders mailed a check to Melissa and Sean David Morton made out to Vajra Productions LLC in the amount of $5,000 that was cashed on March 2, 2007. Saunders then mailed another check to the Mortons made out to Vajra Productions in the amount of $130,000, a copy of which is attached to Saunders' affidavit, on July 16, 2007. (Doc. 42, Saunders Aff. ¶¶ 2–4.). Saunders received nothing in re-

turn for these investments. *Id.* ¶ 17. His legal fees and costs in prosecuting this action have reached $42,000. *Id.*

Although the Court retains discretion to deny Saunders' request for default judgment, the Court sees no reason to recommend exercise of that discretion here. The Defendants, who apparently evaded service in this action, have not appeared and did not communicate with either the Court or Saunders in any way prior to defaulting on March 3, 2010. On April 6, 2010—over a month after the entry of default—the Court received a sworn letter from one Susan Shumsky claiming that Sean Morton is an ambassador to the United States from the "Republic of New Lemuria," and that she is his "Executive Secretary." The letter argues that Morton's diplomatic status confers civil immunity upon himself and his wife, and that the repeated attempts to serve the Mortons constitute "harassment" that, in Shumsky's opinion, is "a clear violation of international law." (Doc. 44.)

Even setting aside the possibilities that Shumsky has engaged in the unauthorized practice of law, or has perjured herself by invoking the immunizing effects of employment with an imaginary country, this letter in no way detracts from Saunders' claim for judgment. Once the default is entered, defendants have no further standing to contest the factual allegations made against them, and may contest the plaintiff's right to recover only by either showing good cause as to why the default should be set aside under Rule 55(c), or contesting the *amount* of plaintiff's recovery. 10A Wright, Miller & Kane, *Federal Practice and Procedure* § 2688 (3d ed.1998). Shumsky's letter achieves neither, and, of course, the Defendants did not appear at the pre-judgment evidentiary hearing for which they had more than two weeks notice.

The Court can only conclude at this point that the Defendants have chosen not to defend or in any way participate in this litigation. The consequence of this choice is default judgment, and the Court recommends that Saunders' motion for default judgment be granted as set forth below.

### III. The Court Should Certify This Default Judgment As Final And Appealable Pursuant to Rule 54(b)

■ In a separate Report and Recommendation filed today (Doc. 64), the Court recommends reinstating previously terminated Defendant Daryl Weber in this litigation, and affording him an opportunity to defend. If that recommendation is adopted, then entering default judgment against the remaining Defendants would leave only Weber as an active Defendant in this case.

Rule 54(b) permits the court to enter a final, appealable judgment against fewer than all defendants if the court certifies that "there is no just reason for delay" and directs the clerk to enter judgment. Fed. R.Civ.P. 54(b). The decision to grant this certification and enter a partial final judgment is left to the discretion of the district court, which is to be exercised "in the interest of sound judicial administration." *Ginett v. Computer Task Group, Inc.*, 962 F.2d 1085, 1092 (2d Cir.1992) (internal quotation marks omitted). The "historic federal policy against piecemeal appeals" requires the court to use its discretion "sparingly," certifying a partial final judgment "only if there exists' some danger of hardship or injustice through delay which would be alleviated by immediate appeal.'" *O'Bert ex rel. Estate of O'Bert v. Vargo*, 331 F.3d 29, 40–41 (2d Cir.2003) (quoting *Cullen v. Margiotta*, 618 F.2d 226, 228 (1980)).

A final Rule 54(b) certification is appropriate in this case for two reasons. First, partial final judgment is in accord with sound judicial administration because the default judgments are unrelated to the merits of Saunders' claims against Weber, and any appeal taken from the entry of default judgment would not duplicate issues relating to the ongoing litigation against Weber. *See, e.g., Federal Deposit Ins. Corp. v. Tripati*, 769 F.2d 507, 508 (8th Cir.1985) (upholding Rule 54(b) certification when "[t]he default judgment is unrelated to the merits of the claims against the remaining defendants[,][and] therefore the underlying action does not need to be reviewed as a single unit.").

Second, as Saunders points out, the Securities and Exchange Commission has commenced parallel civil litigation against Melissa and Sean David Morton, Vajra Productions LLC, 27 Investments LLC, and Magic Eight Ball Distributing. *S.E.C. v. Morton et al.*, No. 1:10–CV–01720, 2010 WL 3056484 (S.D.N.Y. Filed March 4, 2010). If Saunders must wait until his claims against Weber are fully resolved to secure final judgment against these Defendants, then an intervening judgment for the S.E.C. could limit Saunders' ability to protect or enforce his judgment. Thus, there is the possibility that further delay would cause "hardship or injustice" which would be alleviated by certifying final judgment and permitting Saunders to collect on his judgment immediately. *See Tripati*, 769 F.2d at 508 (finding that, when the defaulting parties' "assets were rapidly being dissipated by other criminal and civil litigation, the equities weighed in favor of certification so that the [plaintiff] could begin collecting on the judgment as soon as possible.").

### *Conclusion*

Based on the foregoing reasons and the evidence received from Plaintiff Saunders, the Court recommends GRANTING Saunders' Motion for Default Judgment (Doc. 29), and entering final judgment with Rule 54 certification against the Defendants Sean David Morton, Melissa Morton, 27 Investments LLC, Magic Eight Ball Distributing, Inc., Vajra Productions LLC, and Delphi Associates Investment Group, jointly and severally, as follows:

$ 5,000   Principal, with the accrual of 12% prejudgment interest from March 2, 2007

$130,000   Principal, with the accrual of 12% prejudgment interest from July 16, 2007

$ 42,000   Attorney Fees and costs

Postjudgment interest accruing from the date of judgment at the applicable federal rate.

Finally, the Court recommends GRANTING Saunders' Motion to Dismiss Defendant Joshua Weber (Doc. 58), whom Saunders has been unable to serve.

Dated June 28, 2010.

*REPORT AND RECOMMENDATION*

(Doc. 56)

Plaintiff Tim Saunders brings this action against various individual and corporate defendants alleging federal securities fraud and violations of other state law causes of action. (Doc. 1.) Specifically, Saunders seeks to recover the funds he invested into what he claims was a fraudulent investment scheme devised and executed by the named Defendants. Presently before the Court is Defendant Daryl Weber's Motion for Relief from the Clerk's entry of default judgment entered against him on August 21, 2009. (Doc. 56.) Weber, proceeding *pro se*, seeks various remedies including vacation of the judgment against him and leave to file a Rule 12 motion or Answer to the Complaint. For the reasons set forth below, I recommend that the Court GRANT Weber's motion in part.

### Background

On May 18, 2009, Saunders filed a Complaint alleging that Sean David Morton, Daryl Weber, and the other named Defendants induced Saunders to invest $135,000 into a fraudulent investment scheme. The Complaint alleges what is colloquially known as a "Ponzi scheme," in which investor money is misappropriated for personal use and "to repay earlier investors, avert or settle pending lawsuits, cover up losses, [or] pay expenses." (Doc. 1, Compl. ¶ 76.) In essence, Saunders alleges that the Defendants made materially false misrepresentations to solicit his investment, and then created false financial statements reporting that Saunders' money was profitably invested in the foreign currency market, when in fact it was either lost through poor investments or not invested at all. *Id.* ¶¶ 37–49. The scheme eventually collapsed when it could no longer support itself with new investor funds, at which point the Defendants broke off contact with Saunders. *Id.* ¶ 52. None of the money he invested has been returned.

The Complaint alleges that Sean David Morton was largely responsible for fraudulently soliciting and improperly controlling investor money, but it does not explain the precise nature of Weber's involvement in the scheme. For example, the Complaint alleges that "Morton holds himself out across the United States as an investment expert," and that he "uses a series of LLCs, investments [sic] schemes, marketing tools and incentives to induce investors to invest with him." (Doc. 1, Compl. ¶¶ 27, 34.) It also alleges that Morton "promotes his investment expertise through a nationally syndicated radio show and written newsletter," that he falsely "claimed successful trading and profits during guest appearances on a well-known radio show" to induce investors, and that he dealt personally with Plaintiff Saunders. *Id.* ¶¶ 28, 45.

Allegations about Weber are more general. The Complaint says that Weber was a co-owner and operator, along with Morton, of Defendant Vajra Productions, and that he was an "officer, director, agent and/or employee of Frazer [*sic*] [Valley Trading]." *Id.* ¶¶ 13, 15. Saunders also alleges that Weber operated the investment fund into which Saunders' money was placed, and that Weber exercised that control through Fraser Valley Trading or "other as yet unidentified brokerage firms." *Id.* ¶¶ 17, 50. Saunders does not specifically allege—either in the Complaint or in subsequently filed affidavits—that he had any contact with, or relied on any misrepresentations made by, Daryl Weber. Instead, as far as the record demonstrates thus far, Saunders' knowledge of Weber's participation is limited to his belief—based on unstated facts—that Weber and Morton were "partners" (Compl. ¶ 33; Doc. 42, Saunders Aff. ¶ 6), and that Weber controlled the investment fund into which Morton placed Saunders' money. (Compl.¶ 50.)

In his Motion, Weber concedes that he operated an investment fund containing money from Saunders and others who invested with Sean David Morton, but denies that he was Morton's "partner," and that he was employed, in any capacity, with Fraser Valley Trading.[1] (Doc. 56 ¶¶ 3–5.) Rather, Weber bills himself as an "independent con-

---

1. Weber does not specifically address whether he was a co-owner or operator of Vajra Productions, but his general denial of being Morton's partner would seem, by implication, to deny this as well.

tractor" who was "engaged" by a company called Stoddard Trading LLC to buy, sell, and trade foreign currencies using accounts created by Morton and the corporate defendants. *Id.* ¶¶ 3, 9. As Weber describes it, Morton entered into an agreement with Fraser Valley Trading, which in turn engaged Stoddard Trading, which, in one final maneuver, hired Weber to operate the investment fund into which Morton deposited his investors' money. Morton then provided Weber with the "password, code or account number" to access the accounts, and, according to Weber, any profits or losses from Weber's transactions were reported directly to Morton. *Id.* ¶¶ 13, 15. Weber concedes that his compensation was based on the performance of the investments he made using Morton's accounts, but only indirectly through his contract with Stoddard Trading, and only after Morton compensated Fraser Valley and Fraser Valley paid Stoddard Trading. *Id.* ¶¶ 16–17.

Finally, while Weber describes a rather attenuated relationship with Morton, he also claims detailed knowledge about several aspects of Morton's business. In addition to receiving account numbers and passwords directly from Morton, Weber avers that "all of the funds provided by [Saunders] to [Morton] . . . were deposited to one or the other of the [trading] accounts opened by . . . Morton," that "[p]rofits from trade transactions were disbursed at the discretion of . . . Morton," that any communication or transaction between Morton and Saunders occurred while Morton was in California and Saunders was in Alaska, and that Morton organized and registered the corporate defendants. *Id.* ¶¶ 8, 9, 16–18. How or why Weber acquired all of this information while working as an independent contractor for a company that contracted with another company that, finally, was working directly for Sean David Morton, is left unexplained.

After filing the Complaint, and with considerable assistance from the Chittenden County Sheriff's Department, Saunders personally served Weber in Burlington, Vermont on June 10, 2009. (Doc. 5.) Weber did not file an answer, communicate with the Court or Saunders, or take any other defensive action until he appeared at an evidentiary hearing held on April 8, 2010, a full nine months after his answer to the Complaint was due. By that time, Saunders had already moved for and obtained both a default and a Clerk's entry of default judgment against Weber. (Docs. 10, 14.) Saunders had applied for the entry of default on August 13, 2009, and default entered on August 17, 2009. (Doc. 10.) Four days later, on August 21, 2009, the Clerk entered judgment against Weber in the amount of $176,427.67 with post-judgment interest accruing ever since. (Doc. 14.) Weber received personal service of Saunders' application for default on September 8, 2009 (Doc. 19), which was about two weeks after judgment entered, but seven months before Weber took any action in this case.[2]

When Weber appeared at the April 8 hearing, convened to determine damages as to other Defendants against whom Saunders seeks default judgment, there was no record that Weber had notice of the judgment already entered against him. Consequently, the Court informed him that he was no longer a party to the litigation, that, at that time, he lacked standing to contest the Complaint's factual allegations, and that his only recourse was to move to have the judgment set aside. Weber then filed the present Motion for Relief from Default Judgment on April 27, 2010. (Doc. 56.)

### Discussion

Federal Rule of Civil Procedure 55(c) provides that a "court may set aside an entry of default for good cause, and . . . may set aside a default judgment under Rule 60(b)." Fed. R.Civ.P. 55(c). In relevant part, Rule 60(b) authorizes a court to relieve a party from final judgment for "mistake, inadvertence, surprise, or excusable neglect," or if "the judgment is void." Fed.R.Civ.P. 60(b)(1), (4).

Weber primarily proceeds under Rule 60(b)(4), claiming that the judgment against him is void because either this Court lacks subject matter jurisdiction, or dismissal is

---

**2.** Except to provide Saunders' counsel with an address at which Weber would accept service, which he did via email on September 2, 2009. (Doc. 41–3.)

required under the doctrine of *forum non conveniens*. (Doc. 56 ¶ 2.) But he also makes an apparent attempt, in denying a number of Saunders' factual allegations, to justify relief either under the "good cause" standard for vacating default under Rule 55(c), or what is the more onerous "excusable neglect" standard for vacating judgment under Rule 60(b). The court is directed to consider the same factors whether deciding if the defaulting party has demonstrated "good cause" or "excusable neglect." But the factors are to be applied more leniently toward the defaulting party, and in favor of granting relief, when analyzed under Rule 55's "good cause" standard.

Here, Saunders urges the Court to apply Rule 60's more demanding excusable neglect standard because judgment has entered against Weber. (Doc. 59.) But as explained more fully below, Rule 55(c)'s more forgiving standard must be applied because the Court has not made the requisite Rule 54(b) certification that the judgment against Weber, a single defendant among several, is final. Under this standard, Weber's Motion should be granted to the extent that he seeks a renewed opportunity to defend against Saunders' claims.

## I. Weber's Default Should Not Be Vacated For Lack Of Subject Matter Jurisdiction Or Improper Forum

Weber argues that this Court lacks subject matter jurisdiction over Saunders' claims, and alternatively that Saunders' Complaint must be dismissed under the doctrine of *forum non conveniens*, because many (though not all) of the events out of which Saunders' suit arises took place outside of Vermont. Weber would apparently prefer to litigate this matter in New York or California.

Both of Weber's arguments are unpersuasive. This Court has original jurisdiction over Saunders' claims that arise under federal securities laws (regardless of where the alleged violations of those laws occurred), and supplemental jurisdiction over Saunders' state law claims. Next, dismissal because of an inconvenient forum under *forum non conveniens* is appropriate only when the preferred forum is a foreign jurisdiction, and as

such the doctrine is inapplicable here. And even the domestic analog to *forum non conveniens*—a transfer to a more convenient forum under 28 U.S.C. § 1404(a)—cannot apply to undo a default judgment, particularly when, as here, the defaulting party is a resident of the state in which the judgment court sits. Finally, to the extent that Weber contends that venue does not lie in this District, he has waived that defense by defaulting.

### A. Subject Matter Jurisdiction

██ In his Complaint, Saunders invokes this Court's original jurisdiction over claims arising under federal law, and, in particular, the Securities Exchange Act of 1934. Weber does not dispute that Saunders' suit arises under the Exchange Act, but argues that subject matter jurisdiction does not lie because many of the events described in Saunders' Complaint occurred outside of Vermont. As Weber says, "any actions or decisions made regarding the deposit or withdrawal of funds from accounts used in the currency trades . . . were initiated from jurisdictions other than Vermont and all deposits or withdrawals were from accounts located in the State of New York." (Doc. 56 ¶ 21.) Setting aside Weber's concession that he conducted trades with Saunders' money from computers in Vermont, his argument is wrong because subject matter jurisdiction does not depend on the place where the alleged securities fraud took place.

Section 27 of the Exchange Act provides, "[t]he district courts of the United States . . . shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder." 15 U.S.C. § 78aa; *see also* 28 U.S.C. § 1331 ("the district courts shall have original jurisdiction of all civil actions arising under the . . . laws . . . of the United States."). Since this suit is brought in a district court of the United States to enforce a liability created by Section 10(b) of the Exchange Act, 15 U.S.C. § 78j, and its implementing regulation Rule 10b–5, 17 C.F.R. § 240.10b–5, subject matter jurisdiction exists over Saunders' federal

claims. In addition, this Court has supplemental subject matter jurisdiction over Saunders' state law causes of action pursuant to 28 U.S.C. § 1367(a), which provides that "the district courts shall have supplemental jurisdiction over all other claims that are so related to [the federal] claims in the action ... that they form part of the same case or controversy." Accordingly, the judgment against Weber is not void for lack of subject matter jurisdiction.

## B. *Forum Non Conveniens*

■■■ Weber claims that Saunders' Complaint must be dismissed under the doctrine of *forum non conveniens* because "the contacts with Vermont are so small and few when compared to other jurisdictions," particularly New York and California. (Doc. 56 ¶¶ 8, 21, 24.)

*Forum non conveniens* allows a federal court to dismiss an action even when the court has proper venue when "the forum chosen by the plaintiff is so completely inappropriate and inconvenient that it is better to stop the litigation in the place where brought and let it start all over again somewhere else." *Grammenos v. Lemos,* 457 F.2d 1067, 1074 n. 5 (2d Cir.1972). But since the enactment of 28 U.S.C. § 1404(a), "the federal doctrine of *forum non conveniens* has continuing application only in cases where the alternative forum is abroad." *American Dredging Co. v. Miller,* 510 U.S. 443, 449 n. 2, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994). Here, Weber does not propose a foreign jurisdiction in which this suit should be brought, so *forum non conveniens* does not provide him relief.

Weber's argument also fails if it is analyzed under 28 U.S.C. § 1404(a), the statutory domestic analog to the doctrine of *forum non conveniens.* § 1404(a) permits district courts to transfer any civil action "to any other district or division where it might have been brought" for "the convenience of parties and witnesses" and "in the interest of justice[.]" The Court rejects this argument for three reasons.

■■■ First, even in cases where transfer would be appropriate, § 1404(a) is not juris-

dictional, and therefore does not affect the validity of an existing judgment. Indeed, reliance on § 1404(a) presupposes both jurisdiction and venue, and therefore does not support vacating the judgment against Weber. *See Polk v. New York State Dept. of Correctional Servs.,* 722 F.2d 23, 25 (2d Cir. 1983) (explaining that transfer pursuant to § 1404(a) is appropriate when the suit would be "properly maintainable" in the transferring court).

Second, it would be illogical to vacate a default judgment merely because the forum is inconvenient. To assess whether proceeding with this litigation in Vermont is sufficiently convenient for the parties and witnesses is to assume the very thing that Weber is trying to prove, namely, that judgment should be vacated and the suit against him resuscitated. Obviously, if the default judgment stands and the suit against him remains closed, then no one will be inconvenienced, and there would be no reason to transfer the action. This circular argument does not advance Weber's position.

Third, Weber has provided two different addresses at this point, both of which are in Chittenden County and one of which is within blocks of the Federal Courthouse. (Doc. 41–3.) Weber also accepted personal service of the Complaint in Burlington. (Doc. 5.) Given that, it is impossible to take seriously his claims of "inconvenient forum," and his local residence is a further independent basis on which the Court declines to vacate the judgment against Weber for the sake of convenience.

## C. Venue

■■■ To the extent that Weber seeks to challenge venue in this District, he has waived that defense by defaulting. As one treatise explains, "proper venue is not essential to a valid judgment; therefore a venue defect will be waived by failing to appear and suffering a default judgment." 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2695 (3d ed.1998); *see also Hoffman v. Blaski,* 363 U.S. 335, 343, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960) ("a defendant, properly served with process by a court having sub-

ject matter jurisdiction, waives venue by failing seasonably to assert it, or even simply by making default."). This conclusion is unchanged by the fact that, below, the Court recommends vacating the judgment and default against Weber. Weber is not free of fault for his failure to appear, and he should be reinstated to this suit on the condition that he has waived the defense of improper venue by failing to timely raise the issue in response to Saunders' Complaint. *See* 10A Wright, Miller & Kane § 2700 ("The court's inherent power and use of discretion ... enables it to set aside default entries on various conditions.").

## II. Weber's Default Should Be Vacated For "Good Cause"

In addition to vacating void judgments under Rule 60(b)(4), Rule 55(c) permits courts to set aside defaults for "good cause," and to set aside default judgments under Rule 60(b)(1) for "excusable neglect." Fed. R.Civ.P. 55(c), 60(b)(1). In the Second Circuit, the factors to examine in deciding whether to set aside a default or a default judgment are the same, but "courts apply the factors more rigorously in the case of a default judgment, because the concepts of finality and litigation repose are more deeply implicated in the latter action." *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 96 (2d Cir. 1993); *see also American Alliance Ins. Co., Ltd. v. Eagle Ins. Co.,* 92 F.3d 57, 59 (2d Cir.1996) ("A motion to vacate a default is subject to a less rigorous standard than applies to a Rule 60(b) motion to vacate a default judgment.").

In this case, the Court must apply the factors more leniently towards Weber, as though proceeding solely under Rule 55(c), because the entry of default judgment against Weber was not certified as a final partial judgment under Rule 54(b).

### A. Rule 55(c)'s "Good Cause" Standard Applies To Weber's Motion

The Clerk's default judgment against Weber is not final because it was not so certified under Rule 54(b), and therefore does not implicate Rule 60(b), which applies only to final, appealable judgments. When judg-

ment entered against Weber, a number of other Defendants, including Sean David and Melissa Morton, remained in the litigation. Thus, the judgment order adjudicated Saunders' claims against only one, and not all, of the parties. As such, the judgment could only become final with a Rule 54(b) certification from the Court expressly finding "no just reason for delay" and directing the clerk to enter judgment. Fed.R.Civ.P. 54(b); *see also In re Air Crash at Belle Harbor, NY,* 490 F.3d 99, 108 (2d Cir.2007); *Davis v. Nat'l Mortg. Corp.,* 320 F.2d 90, 91 (2d Cir.1963) (requiring Rule 54(b) certification to finalize a default judgment against fewer than all parties). Without this certification, "any order or other decision, however designated, that adjudicates ... the rights and liabilities of fewer than all the parties does not end the action as to any of the ... parties[.]" Fed. R.Civ.P. 54(b).

There is no Rule 54 certification of the judgment against Weber, and therefore it is not final. This requires the Court to apply Rule 55(c)'s "good cause" standard to Weber's Motion for Relief because, according to its own terms, Rule 60 applies only to "final" judgments. *Federal Deposit Ins. Corp. v. Francisco Inv. Corp.,* 873 F.2d 474, 478 (1st Cir.1989) (stating that the Rule 55(c) standard applies to a default judgment which has not been certified as final pursuant to Rule 54(b)); *Jackson v. Beech,* 636 F.2d 831, 835–36 (D.C.Cir.1980) (explaining that a motion to set aside default is analyzed under Rule 60 only when the default judgment is "certified as final and appealable under Rule 54(b)"); Fed.R.Civ.P. 60(b) (providing grounds for relief from a *"Final"* judgment) (emphasis added).

### B. "Good Cause" Standard

In deciding whether to set aside a default for good cause under Rule 55(c), there are three macro-level considerations for the Court to keep in mind. First, "[a] motion to vacate a default judgment is 'addressed to the sound discretion of the district court,'" who is best positioned to evaluate the facts and equities present in a particular case. *Green,* 420 F.3d at 104 (quoting *State Street Bank & Trust Co. v. Inversiones Errazuriz*

*Limitada,* 374 F.3d 158, 166 (2d Cir.2004)). Second, in exercising this discretion the court must remember that "a default judgment is 'the most severe sanction which the court may apply,'" *Id.* (quoting *Cody v. Mello,* 59 F.3d 13, 15 (2d Cir.1995)), and there is a "strong 'preference for resolving disputes on the merits.'" *Id.* (quoting *Powerserve Int'l, Inc. v. Lavi,* 239 F.3d 508, 514 (2d Cir.2001)). For this reason, "all doubts must be resolved in favor of the party seeking relief from the judgment[.]" *Id.* Third, and of relevance here, "concerns regarding the protection of a litigant's rights are heightened when the party held in default appears *pro se.*" *Enron,* 10 F.3d at 96. Thus, "as a general rule a district court should grant a default judgment sparingly and grant leave to set aside the entry of default freely when the defaulting party is appearing *pro se.*" *Id.*

▆ With this background in mind, the court's discretion in deciding Weber's motion is guided by three factors: (1) whether Weber's default was willful; (2) whether Weber demonstrates the existence of a meritorious defense; and (3) whether, and to what extent, vacating the default will prejudice Saunders. *Green,* 420 F.3d at 108 (applying factors under Rule 60(b)); *Enron,* 10 F.3d at 96 (applying same factors under Rule 55(c)).

#### i. Willfulness

▆ "[W]illfulness in the context of a judgment by default requires 'something more than mere negligence,' such as 'egregious or deliberate conduct[.]'" *Green,* 420 F.3d at 109 (quoting *Am. Alliance,* 92 F.3d at 60). A showing of bad faith, while certainly sufficient to establish willfulness, is not required. *Gucci Am. Inc., Guess, Inc. v. Gold Center Jewelry,* 158 F.3d 631, 634–35 (2d Cir.1998).

Here, there is no question that Weber defaulted willfully, and this factor counts against granting his Motion. As was the case in *RC Entertainment, Inc. v. Rodriguez,* 1999 WL 777903, at *1–2 (S.D.N.Y.1999) (unpublished), the "factual record is clear. The defendant[ ][was] properly served and did not timely answer or file [a] motion[.]"

Weber attempts to justify his tardiness by saying that he could not afford an attorney, and making conclusory, unsupported assertions about suffering from anxiety of the sort that prevents the timely filing of court documents. (Doc. 56 ¶ 25.) Weber's inability to engage an attorney does not excuse the delay, because it does not explain why Weber could not file *something,* or make *any* communication to the Court or opposing counsel to indicate his intent to defend. Weber does not claim that he was unaware of the suit (nor could he, since he was personally served), or of his duty to respond within the prescribed time limit. Weber's unsupported, unsworn claim of anxiety similarly does not mitigate his culpability, particularly since he proved himself more than able to file the present Motion for Relief.

This finding of willfulness is significant, as the Second Circuit has occasionally remarked that "[a] default should not be set aside when it is found to be willful," *Action S.A. v. Marc Rich Co., Inc.,* 951 F.2d 504, 507 (2d Cir. 1991), and has "refused to vacate a judgment where the moving party had apparently made a strategic decision to default." *Am. Alliance,* 92 F.3d at 60. But this case is distinguishable from those in which courts have upheld default judgments solely because of a willful default. Such cases typically involve application of the more onerous Rule 60(b) standard, *see, e.g., Wagstaff–EL v. Carlton Press Co.,* 913 F.2d 56, 57 (2d Cir. 1999); *Action S.A.,* 951 F.2d at 507; *S.E.C. v. Breed,* 2004 WL 1824358, at *12 (S.D.N.Y. 2004), and more egregious willfulness by the defaulting party that is not present here. *See, e.g., Action S.A.,* 951 F.2d at 507 (rejecting request to set aside default judgment because defaulting party deliberately waited *eight years* to seek relief). Because Weber is held to the lesser Rule 55(c) standard, and because he delayed for the comparatively short—though still inexcusable—duration of nine months, his willfulness counts against granting his Motion but is not sufficient to defeat it entirely.

#### ii. Meritorious Defense

▆ A "defense is meritorious if it is good at law so as to give the fact-finder some determination to make." *Am. Alliance,* 92

F.3d at 61. "The test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *Enron Oil*, 10 F.3d at 98. And to establish the defense, "[a] 'defendant must present more than conclusory denials.'" *Green*, 420 F.3d at 110 (quoting *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 173 (2d Cir. 2001)).

In his Motion for Relief, Weber attempts to establish his defense by asserting facts to show that his role in investing Saunders' money was entirely separate from any fraud allegedly committed by Sean David Morton. Weber claims he merely controlled the investment funds into which Morton and the corporate Defendants (under Morton's control) deposited money. He denies any formal business relationship with Morton, saying instead that he was an independent contractor hired by Stoddard Trading, which in turn was working for Fraser Valley Trading which was working directly with or on behalf of Morton. Weber also denies any direct relationship with Saunders, saying that "[a]t no time did [he] ever meet, solicit, contact, contract with or make false representations to the Plaintiff, Tim Saunders, to encourage or cause him to transfer funds to Defendant, Sean David Morton[.]" (Doc. 56 ¶ 7.)

Saunders provides no meaningful response to the possibility that Weber has a meritorious defense, saying nothing beyond the conclusory assertion that "Weber has shown no 'Meritorious Defense.'" (Doc. 59 at 3.) As it turns out, Saunders' response to Weber's Motion is not all that is deficient. A review of the Complaint reveals that Saunders' fraud (and in particular, securities fraud) allegations against Weber could be vulnerable to a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6). On this basis, the "meritorious defense" factor supports Weber's request for relief. *See, e.g.,*

*Coursey v. City of Camden*, 2009 WL 3756936, at *2 (D.N.J.2009) (unpublished) (finding a meritorious defense when defaulting party noticed its intent to file a Rule 12(b)(6) motion to dismiss); *Hayek v. Big Brothers/Big Sisters of America*, 198 F.R.D. 518, 524 (N.D.Iowa 2001) (finding "sufficiently 'meritorious' defense" to weigh in favor of vacating default when defects itemized in the defaulting party's proposed Rule 12(b)(6) motion were "arguably present" in the Complaint).

The basic elements of Saunders' securities fraud claim under Section 10(b) and Rule 10b–5 are "(1) a material misstatement or omission, (2) scienter, (3) a connection with the purchase or sale of a security, (4) reliance ..., (5) economic loss, and (6) 'loss connection, *i.e.*, a causal connection between the material misrepresentation and the loss.'" *In re Salomon Analyst Metromedia Litig.*, 544 F.3d 474, 478 (2d Cir.2008) (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005)); 17 C.F.R. § 240.10b–5.

■■■ Under Rule 9 of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act ("PSLRA"), securities fraud must also be pled with particularity. *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 168–69 (2d Cir.2000); Fed. R.Civ.P. 9; 15 U.S.C. § 78u–4(b)(1)–(2). This requires the Complaint to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir.2000) (internal quotation marks omitted).[3] And when fraud is alleged against multiple defendants, the Complaint must particularly state the allegations attributable to each individual defendant. *Di Vittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987). A defendant who does not actually

---

**3.** The PSLRA provides for a substantively similar pleading standard. It says that "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on infor- mation and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). It also mandates a heightened standard for pleading the requisite state of mind. 15 U.S.C. § 78u–4(b)(2).

make a false or misleading statement could be accused only of aiding and abetting or conspiracy, neither of which gives rise to private liability under § 10(b). *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164, 191, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994) ("a private plaintiff may not maintain an aiding and abetting suit under § 10(b)."); *Dinsmore v. Squadron, Ellenoff, Plesent, Sheinfeld & Sorkin,* 135 F.3d 837, 838 (2d Cir.1998) (holding that there is no private cause of action for conspiracy to violate § 10(b) or Rule 10b–5).

Under this heightened pleading standard, Saunders is required to plead *each* element of a § 10(b) claim as to *each* individual Defendant, including Weber. But reading the Complaint in its current form, one searches in vain for an allegation that Weber personally made any materially false statements or omissions on which Saunders relied, or that any such misrepresentations were made "in connection with the purchase or sale of any security." Aside from the specific allegations made against Sean David Morton, the Complaint attributes various misrepresentations to the "Defendants" in general.[4] The Second Circuit considered a similarly crafted Complaint in *Luce v. Edelstein,* 802 F.2d 49, 54 (2d Cir.1986) and concluded that "[s]uch allegations, which fail to specify the time, place, speaker, and sometimes even the content of the alleged misrepresentations, lack the 'particulars' required by Rule 9(b)."

At this point, the very most one can make of Saunders' allegations against Weber is that Weber made false statements merely to placate Saunders, i.e., to keep him from withdrawing funds, but not to induce him into investing initially or to make subsequent investments. And even that requires attributing vague allegations about false bookkeeping by "the funds" to Weber personally. Saunders alleges that Weber operated the

fund into which Saunders' investment was placed, and claims that "the funds were losing money and hiding those losses through deliberately false reporting, false bookkeeping, and fraudulent concealment." (Doc. 1, Compl.¶ 48.) But even if "the funds" means "Weber" (which is quite a stretch under the particularity requirements of Rule 9 and the PSLRA), there is no allegation that Saunders, once invested, relied on the false claims of profits and fraudulent bookkeeping to invest *more.* Therefore, even assuming that Weber made such misrepresentations to Saunders, they were not "in connection with the sale or purchase of securities" as required for § 10(b) liability. *Cf. S.E.C. v. George,* 426 F.3d 786, 793–94 (6th Cir.2005) (holding that plaintiff sufficiently pled securities fraud with respect to a broker who had participated in a Ponzi scheme, and *encouraged others to participate in that scheme* ).

These gaps in Saunders' Complaint are magnified by the facts in Weber's Motion for Relief, which assert that Weber did nothing more than conduct foreign currency trades in isolation from Morton's investors and whatever nefarious activity was afoot. At this stage, this is sufficient to establish a meritorious defense to the securities fraud claim, as well as the other claims predicated on fraudulent activity that are required to satisfy Rule 9's heightened pleading standard. Although there are other claims in the Complaint, Weber need not establish defenses to all of them in order for the meritorious defense factor to weigh in his favor. *See, e.g., S.E.C. v. Sierra Brokerage Servs., Inc.,* 2007 WL 1057384, at *10 (S.D.Ohio 2007) (unpublished) (finding it "unnecessary to determine whether meritorious defenses exist[ ] for the other claims" because the defendants "possesse[d] a meritorious defense to the claims predicated on fraudulent activity."). It is enough that, should Weber prevail on his

---

4. For example, *"Defendants* periodically release false statements such as '[We are] on track for twice as much profit' to induce Plaintiff to act or forebear from acting."; "When Plaintiff expressed an interest in investing over $100,000 with *Defendants* on or about June 1, 2007, *Defendants* issued false statements to induce Plaintiff to invest."; "Once *Defendants* induced Plaintiff to act on the 'Heaven and Earth' investment,

Defendant Melissa Morton diverted his $135,000 into a Vajra account"; *"Defendants* commingled the funds and misappropriated funds to benefit themselves at the expense of Plaintiff"; *"Defendants* continued to issue false statements to Plaintiff such as 'The traders have been making several thousands a day[.]' " (Doc. 1, Compl. ¶¶ 36, 37, 39, 41, 42) (emphasis added).

defense to the fraud allegations, there is some possibility that the "outcome of the suit may be different than if the entry of default or the default judgment is allowed to stand." *In re Martin–Trigona,* 763 F.2d 503, 505 n. 2 (2d Cir.1985) (internal quotation marks omitted).

### iii. Prejudice to Saunders

The final factor to consider is whether and to what extent vacating the default against Weber will unfairly prejudice Saunders. *Green,* 420 F.3d at 110. To establish prejudice, something more than the costs and delays inherent in prosecuting civil litigation is required. *Davis v. Musler,* 713 F.2d 907, 916 (2d Cir.1983). Delay could result in unfair prejudice if, for example, it thwart's the plaintiff's recovery or remedy, results in the loss of evidence, creates increased difficulties of discovery, or provides greater opportunity for fraud and collusion. *Green,* 420 F.3d at 110.

Here, Saunders argues that further delay will thwart his recovery because the Securities and Exchange Commission has commenced concurrent litigation "against many of the same parties." (Doc. 59 at 4.) Saunders is concerned that if the SEC secures a judgment of its own, "any delay here prevents Plaintiff Saunders from protecting his judgment against these defendants from the SEC and other creditors." *Id.* But as Saunders concedes, the SEC has not named Daryl Weber as a defendant, and his concerns will be addressed if, as the Court recommends in a separate Report filed today (Doc. 63), final judgment is entered against all of the remaining Defendants besides Weber. Accordingly, Saunders asserts no unfair prejudice that would result from vacating the default against Weber, and this factor weighs in favor of granting Weber's Motion.

Considering these factors together under the more lenient Rule 55(c) standard, and in light of the disfavor with which this Circuit generally views default judgments, the Court finds that good cause exists to vacate both the default and default judgment against Weber. Although they are not to be applied as a strict mathematical formula, the Court notes that two of the three principal factors weigh in favor of Weber. In particular, the

lack of specificity in Saunders' Complaint combined with Weber's factual claims cast doubt on Saunders' ability to establish liability either through dispositive motions or at trial. And assuming certified judgment against the other Defendants, Saunders does not claim any prejudice in proceeding with this suit other than the costs and delays that he could expect in any civil litigation.

Counting against Weber is his inexcusable delay in defending this suit, and Weber is now cautioned that any future dilatory conduct will result in severe sanctions, including judgment against him. But for the reasons stated above, the Court concludes that this factor is an insufficient basis, standing alone, on which to uphold the existing default judgment. Instead, considering Weber's possible meritorious defense and the lack of unfair prejudice to Saunders, combined with the understanding that "the extreme sanction of a default judgment must remain a weapon of last, rather than first, resort," *Meehan,* 652 F.2d at 277, the Court should afford Weber one last opportunity to defend against Saunders' suit.

### Conclusion

For the foregoing reasons, Weber's Motion for Relief from Default Judgment (Doc. 56) should be GRANTED in part. The Court should vacate the default and default judgment entered against Weber, and reinstate Weber as a Party to this suit. Weber should be provided 14 days to file an Answer or Rule 12 motion, with the condition that Weber's default caused him to waive the defense of improper venue.

In a separate Report and Recommendation filed today (Doc. 63), the Court also recommends dismissing Defendant Joshua Weber from this suit, and entering final default judgment against the remaining Defendants Sean David Morton, Melissa Morton, 27 Investments LLC, Magic Eight Ball Distributing, Inc., Vajra Productions LLC, and Delphi Associates Investment Group. For the reasons stated in that Report, and in accordance with Rule 54(b), "there is no just reason [to] delay" entering that judgment, even with Daryl Weber reinstated as a Defendant. *See Hogan v. Consolidated Rail Corp.,* 961 F.2d

1021, 1024–25 (2d Cir.1992); Fed.R.Civ.P. 54(b).

Dated June 28, 2010.